Argued and submitted January 4, decision of the Court of Appeals reversed and
judgment of the circuit court affirmed May 26, 1994

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# RICHARD ERIC JOHANESEN,
*Respondent on Review.*

## (CC C890070CR; CA A75601; SC S40671)

873 P2d 1065

Youlee Yim You, Assistant Attorney General, Salem, argued the cause on behalf of petitioner on review. With her on the petition were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem.

Marc Sussman, Portland, argued the cause and filed a response on behalf of respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

UNIS, J.

## UNIS, J.

■ In *State v. Classen*, 285 Or 221, 232, 590 P2d 1198 (1979), this court, in the context of a motion by a defendant to suppress photographic identification evidence offered for substantive purposes[1] on the ground that it was the product of a suggestive procedure, stated as a matter of evidence law, not constitutional law, that the decision on admissibility involves two steps:

> "First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures prescribed to avoid such suggestiveness. If so, then [the second step requires] the prosecution [to] satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." (Footnote and citation omitted.)

■ In the second step, the ultimate issue is "whether an identification made in a suggestive procedure has nevertheless been demonstrated to be reliable despite that suggestiveness." *Id.* at 233. If the proffered evidence survives that test, its reliability and probative force under the circumstances of the identification are questions for the jury. *Id.*

■ The question presented in this case is whether the test set forth in *State v. Classen, supra*, applies to pretrial photographic identification evidence offered by a criminal defendant for impeachment purposes[2] and, if not, what evidentiary rules govern the admissibility of such evidence.

On July 27, 1988, Vennes was working in a grocery store. A man approached him and opened his jacket, revealing a handgun. The man asked Vennes, "Do you want to live?"

---

[1] Evidence is offered for substantive purposes when it is offered "to persuade the factfinder that a fact in issue is true * * *. If the evidence is a statement, it is used substantively when it is offered for the truth of the matter stated." Poulin, *Evidentiary Use of Silence and the Constitutional Privilege Against Self-Incrimination*, 52 Geo Wash L Rev 191, 192 n 2 (1984).

[2] Impeachment refers to the elicitation or presentation of any matter for the purpose of impairing or destroying the credibility of a witness in the estimation of the trier of fact. *Simpson v. Sisters of Charity of Providence*, 284 Or 547, 564, 588 P2d 4 (1978); *State v. Gilbert*, 282 Or 309, 311, 577 P2d 939 (1978).

When Vennes answered, "Yes," he was told to "empty the till out of all the money." Vennes complied, and the man left with about $500. At defendant's November 1989 jury trial for first degree robbery, ORS 164.415, Vennes testified that on October 27, 1988, he selected the photograph of the robber from an array of photographs prepared by the police. Other evidence showed that the photograph Vennes selected was that of defendant. When asked on cross-examination by defense counsel whether anyone in the courtroom was the person that robbed him, Vennes replied, "I couldn't be a hundred percent sure, * * * possibly the defendant." Vennes testified that he did not think the robber had a full beard, mustache, or glasses. At trial, defendant had a full beard, mustache, and wore glasses. Vennes also testified that the robber was "much skinnier" than defendant and was not as tall as defendant. Another eyewitness identified defendant as the robber.

Two days before defendant's trial, a defense investigator showed Vennes a photographic display, consisting of three photographs of clean-shaven men and one photograph of a man with a moustache, persons whose names had been supplied to the defense investigator as possible suspects in the robbery. Defendant's photograph was not included in that display. The defense investigator did not tell Vennes that the suspect was one of the persons among whose pictures he was shown. Vennes stated that one of the persons in the throwdown — the man with the moustache — "could be the robber."

After the jury was impaneled, defense counsel provided the state with the photographs used in the defense investigator's photographic array and a report of the defense investigator's interview with Vennes. Defense counsel notified the state that he intended to have the defense investigator testify about Vennes' out-of-court photographic identification of someone other than defendant as the possible robber. Such testimony, defense counsel asserted, is admissible to impeach Vennes, who had earlier chosen defendant's photograph from an array of photographs prepared by the police. The state objected to the admission of the defense investigator's testimony, arguing that disclosure of the evidence was untimely and that the defense investigator's photographic display was unduly suggestive. The trial court ruled

that defendant had violated the discovery rules by not revealing that he intended to call the defense investigator, that the state was prejudiced, and that exclusion of the evidence was the only appropriate remedy. From his conviction for first degree robbery, defendant appealed.

The Court of Appeals held that before a court may exclude defense evidence because of a discovery violation the court must (1) find actual prejudice to the state and the record must support that finding, and (2) determine that no other sanction short of exclusion would remedy the prejudice to the state. *State v. Johanesen*, 110 Or App 348, 351, 822 P2d 154 (1991). The Court of Appeals further held that the trial court abused its discretion in excluding the evidence without first determining whether the state was actually prejudiced by the discovery violation. *Id.* at 352. The Court of Appeals vacated the judgment and remanded the case to the trial court for further proceedings, stating:

> "On remand, the state will have adequate time to prepare its challenge to the defense evidence. Therefore, it is unnecessary for the court to consider alternate sanctions. Instead, if the court finds that the evidence is not admissible, it shall re-enter the judgment. If the court finds that the evidence is admissible, it shall grant defendant a new trial." *Id.*

On remand, the trial court held a hearing to reconsider the admissibility of the defense investigator's photographic identification evidence. The defense investigator testified that a proper police photographic display would have included only men with the same features and facial hair as defendant and that he had not followed police procedures in preparing the defense photographic display. The trial court ruled that the evidence should be excluded because the defense photographic identification evidence was inadmissible under the standards that apply to police photographic displays. The trial court then entered an order reinstating the judgment of conviction for first degree robbery. Defendant appealed from that order.

On the second appeal, the Court of Appeals held that defendant's proffered photographic identification impeachment is

> "in the nature of a prior inconsistent statement subject to the limitations of OEC 613. The suggestiveness of the throwdown goes to weight, not admissibility. The state can seek to

overcome the evidence by showing that the throw-down did not conform to police procedures designed to ensure fairness. Also, as with any attempted impeachment, the witness would have an opportunity to explain the choice of, or comments about, a certain photograph." *State v. Johanesen*, 121 Or App 538, 541, 855 P2d 1118 (1993).

However, the Court of Appeals held that such impeachment evidence was subject to exclusion under OEC 403[3] and that the trial court erred in not making an OEC 403 determination concerning the photographic identification evidence offered by defendant. *Id.* at 541-42. The Court of Appeals reversed and remanded to the trial court with instructions:

"If the trial court concludes that the evidence is admissible under OEC 403, it shall order a new trial. If it concludes that the evidence is inadmissible, it shall reinstate the judgment [of conviction]." *Id.* at 542.

We allowed the state's petition for review and now reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

The state claims that the *State v. Classen* test applies with equal force to photographic identification evidence offered by the defense for impeachment purposes. The state misinterprets *State v. Classen.* In *Classen*, this court reviewed the decisions of the Supreme Court of the United States that require suppression of identification evidence obtained in violation of a criminal defendant's due process rights under the Fourteenth Amendment to the federal constitution. This court then stated that those decisions under the Fourteenth Amendment "only pronounce constitutional tests which a state's rules of evidence, and their application in a particular case, may not fail." *State v. Classen, supra*, 285 Or at 226. This court recognized that it must identify the applicable state rule before it reached a federal constitutional question. *Id.*[4] Because Oregon had no clear evidentiary rule

---

[3] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[4] This court's methodology is first to dispose of non-constitutional claims, *State v. Rodriguez*, 317 Or 27, 31, 854 P2d 399 (1993), second, if necessary, state

on suggestively obtained identifications, this court fashioned a new evidentiary rule governing the admissibility of photographic identification evidence sought to be excluded by a criminal defendant as a product of an unduly suggestive procedure. *Id.* at 232. The rule is derived from the federal standard under the Due Process Clause of the Fourteenth Amendment for determining the admissibility of pretrial identification evidence offered by the prosecution. The *Classen* rule is designed to protect the reliability of the verdict, *i.e.*, to minimize the danger of convicting the innocent on the basis of unreliable identification evidence.

■     The due process concerns that underlie the evidentiary rule that this court announced in *State v. Classen, supra,* are not present when a criminal defendant proffers identification evidence to impeach an eyewitness' identification. We agree with the Court of Appeals that the evidentiary rule that this court announced in *Classen* does not control the admissibility of photographic identification evidence offered by a defendant in a criminal case. Our inquiry, then, is to determine what evidentiary rules govern the admissibility of such impeachment evidence and to apply those rules to the facts of this case.

■     According to the Court of Appeals, defendant's proffered evidence of Vennes' credibility is "in the nature of a prior inconsistent statement subject to the limitations in OEC 613." *State v. Johanesen, supra,* 121 Or App at 541. We disagree. OEC 613[5] controls the use of a witness' prior statement if offered to impeach on the grounds that it is

---

constitutional claims, and finally, if necessary, federal constitutional claims, *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983).

[5] OEC 613 provides:

"(1) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(2) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in [OEC 801(4)(b)]."

inconsistent[6] with the witness' testimony. This means that OEC 613 does not apply where, as in this case, a witness is sought to be impeached by showing that the witness has made two inconsistent or contradictory out-of-court statements (here, two inconsistent out-of-court identifications).[7] Therefore, we look to other provisions of the Oregon Evidence Code to determine the admissibility of defendant's proffered impeachment evidence.

■ OEC 607[8] allows any party to impeach the credibility of any witness. Under OEC 401, proffered evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence helpful in evaluating the credibility of a witness is "of consequence to the determination of the action." Kirkpatrick, Oregon Evidence 107 (2d ed 1989). *See State v. Hubbard*, 297 Or 789, 796, 688 P2d 1311 (1984) (evidence is relevant to a matter of consequence to the determination of the case if it has a mere tendency to impeach a witness by a showing of bias or interest).[9] Professors Wright and Graham explain the relevance of evidence of credibility as follows:

" 'Evidence of credibility' * * * is evidence relevant to the existence or non-existence of the four 'testimonial assumptions.' The testimony of an eye-witness to a material fact[, *i.e.*, a fact of consequence to the determination of the action,] can be taken as proof of the fact only by assuming (1) that the

---

[6] As to the requirement of inconsistency in prior statements used for impeachment, this court has said that "any material variance" between the testimony of the witness and the witness' previous statement will suffice. *Rigelman v. Gilligan*, 265 Or 109, 121, 506 P2d 710 (1973). *See* 1 McCormick on Evidence 115, § 34 (4th ed 1992) (suggesting that the test for inconsistency "should be, could the jury reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a prior statement of this tenor?").

[7] Defendant did not offer at trial and makes no claim in this court that the defense investigator's identification testimony is admissible to impeach Vennes' in-court testimony that defendant possibly could be the robber. If defendant had made such an offer at trial and claim on appeal, OEC 613 would apply.

[8] OEC 607 provides:

"The credibility of a witness may be attacked by any party, including the party calling the witness."

[9] *See also* OEC 611. OEC 611(1) empowers the trial court with reasonable control over the mode and order of presenting evidence to ascertain the truth. OEC 611(2) allows cross-examination on "matters affecting the credibility of witnesses."

witness perceived the fact, (2) that he accurately recalls his perception, (3) that he is truthfully stating his recollection, and (4) that he is expressing his testimony in a way that permits it to be properly understood by the jury. It is obvious that any evidence as to the validity of these assumptions is relevant evidence." Wright and Graham, 22 Federal Practice and Procedure 143-44, § 5177 (1978) (footnotes omitted).

OEC 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code, by the Constitutions of the United States and Oregon, or by Oregon statutory and decisional law." "If the evidence is not barred by OEC 402, it may, nevertheless, be excluded by the trial court under OEC 403." *State ex rel Juv. Dept. v. Beasley*, 314 Or 444, 450, 840 P2d 78 (1992). OEC 403 articulates the judicial power to exclude relevant evidence because of probative dangers or considerations. Relevant evidence may be excluded under OEC 403 only if its persuasive force ("probative value") is substantially outweighed by one or more of the articulated dangers or considerations.[10] This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons "substantially outweigh" the probative value.[11] OEC 403 favors admissibility, Kirkpatrick, *supra*, at 126, while concomitantly providing the means of keeping distracting evidence out of the trial.

---

[10] The existence of the articulated dangers or considerations set forth in OEC 403 is a preliminary question of fact under OEC 104(1). *State ex rel Juv. Dept. v. Beasley*, 314 Or 444, 453 n 17, 840 P2d 78 (1992). "In making its determination the court is not bound by the rules of evidence except those with respect to privileges." OEC 104(1).

[11] In *State v. Pinnell*, 311 Or 98, 112-13, 806 P2d 110 (1991), this court stated that OEC 403, like its federal counterpart, FRE 403,

"requires the judge to go through a conscious process of balancing the costs of the evidence against its benefits. Unless the judge concludes that the probative worth of the evidence is 'substantially outweighed' by one or more of the countervailing factors, there is no discretion to exclude; the evidence must be admitted. * * * [T]he process of balancing is a prerequisite to the exercise of discretion * * *. [T]he rule presupposes a two-step process — balancing, then the discretionary judgment. * * * Discretion is an intuitive process not susceptible to the quantification presupposed by the metaphor of the scales." (Quoting Wright and Graham, 22 Federal Practice and Procedure 263-64, § 5214 (1978) (footnotes omitted)).

██ ██ In this case, Vennes testified at trial that three months after the robbery he selected the photograph of the robber in an array of photographs prepared by the police. Other evidence showed that the photograph Vennes selected was that of defendant. Vennes' testimony about his out-of-court identification was received by the trial court as substantive evidence of a prior statement "of identification of a person made after perceiving the person" under OEC 801(4)(a)(C).[12] The defense investigator's photographic identification testimony that Vennes identified someone other than defendant that "could have been the robber" is relevant extrinsic evidence[13] of Vennes' credibility.[14] The inconsistency between Vennes' two out-of-court photographic identifications is clear. The inconsistency affects the perception and memory components of Vennes' credibility.[15] The inconsistency would have a tendency to make Vennes' identification of defendant as the robber from the array of photographs prepared by the police less probable in the eyes of the jury than it would be without such evidence. Defendant's proffered identification testimony is, therefore, relevant evidence under OEC 401.

Next, we must decide whether defendant's proffered identification testimony is subject to exclusion under one of the exceptions to the admissibility of relevant evidence set forth in OEC 402. For reasons previously stated, we have

---

[12] OEC 801(4)(a)(C) defines as not hearsay a prior statement "of identification of a person made after perceiving the person" if the declarant "testifies at the trial or hearing and is subject to cross-examination concerning the statement." A noncorporeal identification of a person from a photograph may qualify for admission under OEC 801(4)(a)(C). Kirkpatrick, Oregon Evidence 497 (2d ed 1989).

[13] A distinction of pervasive importance in the law relating to impeachment is the distinction "between 'intrinsic' evidence [through direct or cross-examination] affecting credibility, i.e., evidence elicited from the witness whose credibility is sought to be drawn into question, and 'extrinsic' evidence, i.e., evidence produced from some other source[,]" Cleary, Strong, Broun and Mosteller, Evidence, Cases and Materials 540 (4th ed 1988), "any evidence other than testimony given at the instant proceeding by the witness in question," Wright and Gold, 28 Federal Practice and Procedure 519, § 6203.

[14] Defendant proffered the testimony of the defense investigator only for impeachment purposes. We do not, therefore, consider whether such evidence was admissible as substantive evidence under OEC 801(4)(a)(C), *see supra*, note 12, or under any other evidentiary rule.

[15] "The function of all impeachment is to negative, in whole or in part, one or more of [the] 'components of credibility.'" Cleary, Strong, Broun, and Mosteller, *supra*, at 539.

rejected the state's only claim for exclusion under OEC 402, *i.e.*, the claim that the proffered impeachment testimony is barred by the decisional law of *State v. Classen, supra.*

The state also argues that even if defendant's proffered identification evidence is not barred by *State v. Classen, supra,* the evidence was nevertheless properly excluded by the trial court under OEC 403. Defendant acknowledges that if the evidence is to be excluded it must be on the basis of OEC 403.

■ In making this OEC 403 determination with respect to out-of-court photographic identification evidence offered by a criminal defendant, factors of the kind identified by this court in *State v. Classen, supra,* 285 Or at 232-33, are relevant, although, as noted, *Classen* itself is not controlling. These factors include (1) the procedures used to minimize the unreliability of the identification, (2) the opportunity that the identifier had at the time to get a clear view of the person involved in the crime, (3) the attention that the identifier gave to the assailant's features, (4) the timing and completeness of the description given by the identifier after the event, (5) the certainty expressed by the identifier about that description, and (6) the lapse of time between the original observation and the subsequent identification. Other facts also may be important, such as (7) the age and sensory acuity of the identifier, (8) the identifier's special occupational concern with people's appearance or physical features, and (9) the frequency of the identifier's contacts with individuals sharing the general characteristics of the person identified.

■ Our examination of the record leads us to conclude that the trial court performed its required balancing task under OEC 403 and did find that the countervailing dangers or considerations created by the suggestive aspects of the identification substantially outweighed the probative value of the evidence. We also conclude that the facts in the record support that finding, which was an alternative basis for the trial court's exclusion of the proffered photographic identification evidence. In his trial court memorandum, defendant argued that the evidence was both probative and necessary.[16]

---

[16] In his memorandum, defendant argued:

"The need for such evidence is compelling since the store clerk [Vennes] did not identify the defendant in court and the difference between the defendant's

The trial court reviewed defendant's memorandum. In its findings, the trial court stated:

> "[I]f I looked at 403 with the undue delay and the other — [w]ell, the three dangers that are described in the text of Professor Kirkpatrick — there are three dangers, two considerations. The dangers are unfair prejudice, confusion of the issues, misleading the jury; two considerations, undue delay and needless presentation of cumulative evidence. I think danger No. 3, misleading the jury, is the one that is the most pronounced factor in keeping it out. And even if I balanced it under 403, I think that danger alone, notwithstanding you might give a curative instruction, would be unable to unring the bell * * *. So I think that the danger of misleading the jury outweighs the presumptiveness of having it admissible, which is the policy behind 403."

After making those findings, the trial court asked counsel whether additional findings were desired. The trial court specifically asked defense counsel:

> "THE COURT: Do you have anything you want me to address * * *? Any issue or factor, finding that you want me to focus on, so you can have as complete a record as possible?
>
> "[DEFENSE COUNSEL]: I believe that the statement of your analysis should be sufficient."

The facts of record in this case support the trial court's OEC 403 determination. The trial court, therefore, did not err in excluding defendant's proffered identification impeachment evidence.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

appearance and physical characteristics and those *consistently* described by the witness, one of whom stood right beside the robber, are substantial." (Emphasis in original.)