Argued and submitted June 21, 1994, affirmed June 21, 1995

## Gary F. HUNTER,
*Respondent,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Appellant.*

(9202-01178; CA A78885)

898 P2d 201

William L. Hallmark argued the cause for appellant. With him on the briefs was Hallmark, Keating & Abbott, P.C.

Robert K. Udziela argued the cause for respondent. With him on the brief were John S. Stone and Pozzi, Wilson & Atchison.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals a judgment entered after trial to the court ordering defendant to pay damages to plaintiff, who was injured by one of defendant's policyholders. We affirm.

We state the facts in the light most favorable to plaintiff, who prevailed at trial. *Sullivan v. Oregon Landmark-One, Ltd.*, 122 Or App 1, 3, 856 P2d 1043 (1993).

Plaintiff and a friend spent the evening at a local restaurant and bar. As the restaurant was about to close, plaintiff and another patron, Hoyt, became involved in an argument in the parking lot. Hoyt had, by all accounts, been drinking a substantial quantity of alcoholic beverages that evening, having consumed as many as ten bourbon and coke "doubles or triples," as well as wine and tequila, over the course of six or seven hours. The upshot of the altercation was that Hoyt hit plaintiff in the jaw, knocking him to the ground. Hoyt was arrested and taken into custody, charged with assault and later convicted of the lesser included offense of assault in the third degree.

Plaintiff sued Hoyt for personal injuries sustained in the fight. A jury found Hoyt 65 percent at fault and plaintiff 35 percent at fault, and judgment was entered against Hoyt in the sum of $64,120.59.

Plaintiff then sued defendant, which had issued a homeowner's policy to Hoyt's parents. Under that policy, a relative who is a permanent resident of the insureds' household is also considered to be an "insured." The policy covers personal liability as follows:

"We shall pay all damages from an **occurrence** which an **insured** is legally liable to pay because of **bodily injury** or **property damage** covered by this policy.

"[An] **occurrence** means: a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **insured**."

(Boldface in original.) Plaintiff alleged that, under the terms of that policy, defendant was liable to him for the $64,120.59 damage award.

Defendant denied that Hoyt was an insured under his parents' policy. It also alleged a number of affirmative defenses. Relevant to this case is the defense that plaintiff's claim is subject to certain exclusions in the policy:

"We do *not* cover **bodily injury** or **property damage**:

"* * * * *

"3. Either:

"a. caused intentionally by or at the direction of an **insured**, or

"b. resulting from any **occurrence** caused by an intentional act of an **insured person** where the results are reasonably foreseeable."

(Emphasis and boldface in original.) According to defendant, any injuries plaintiff suffered were intentionally caused by Hoyt or were caused by an intentional act of Hoyt with the resulting injury to plaintiff being reasonably foreseeable. Defendant also alleged that, because Hoyt had been convicted of assault in the third degree, plaintiff could not deny that Hoyt's acts were intentional and subject to either of the foregoing exclusions.

At trial, the parties focused considerable attention on whether or not Hoyt was intoxicated and whether or not he intended to hit plaintiff. Hoyt's own testimony was not entirely consistent on the matter. He alternately testified that he was intoxicated and that he was not, that he intended to strike plaintiff and that he did not.

On direct examination, for example, Hoyt testified:

"Q. Now, would you tell the Court in your own words what happened as you left O'Callahan's that night up to the time that this incident took place?

"A. I had — I was in the establishment and when the place started to close, since I was close to the door I had gotten up and left and walked outside, and as I just entered the street, which would be the parking lot, I heard some people arguing, and as it seemed to be very loud to me I had walked over and heard them, thought they were saying something that they were being too drunk to drive, and I had said something like you shouldn't let him drive if he's too drunk.

"Q. Now, was one of these persons [plaintiff]?

"A.   Yes, it was.

"Q.   Did you direct that comment to [plaintiff] or his companion?

"A.   I believe it was [plaintiff] at the time.

"Q.   And what response came back and from whom?

"* * * * *

"A.   He said, 'Who in the fuck are you?' And I said something like I'm your worst nightmare, and I remember him grabbing my shirt collar.

"Q.   'Him' being who?

"A.   [Plaintiff].

"Q.   Okay.

"A.   And with a reflection I brushed his arms free and in an upward motion, you know, something like this, and I punched him.

"* * * * *

"Q.   Now, tell the Court what you remember happening at this point and what you do.

"A.   I just remember after we passed some words that he had grabbed my shirt collar and he —

"Q.   'He' being [plaintiff]?

"A.   Right, and that's when I ran his hands up like this and I felt his hands hit the side of my face.

"Q.   Then you react?

"A.   I reacted and just leaned into him.

"Q.   Did all this happen rather fast?

"A.   It was a split second, just a matter of seconds.

"Q.   Did you have any warning that it was going to happen?

"A.   I couldn't have foreseen it at all.

"* * * * *

"Q.   Did you intend to strike him?

"A.   No, sir.

"Q.   Did you intend to cause him injury?

"A.   No, I did not."

On cross-examination, he further testified:

"Q.  And you knew at that age that a punch to the face could cause bruising?

"A.  Yes, sir.

"Q.  And it could cause other injuries including maybe a broken jaw or loose teeth or a black eye?

"A.  Yes, sir, if a person was to really think about it, yes.

"Q.  You knew that at the time, didn't you?

"A.  I don't think I knew much of anything at that time.

"Q.  When you were 27 years old you knew that punches to the face could hurt people?

"A.  In a different atmosphere, I suppose if a person hadn't been drinking and thinkin' clearly, he would know such a thing.

"Q.  So today you're here testifying that you weren't thinking clearly at the time?

"A.  I don't believe I was.

"* * * * *

"Q.  You said something to the effect of after [plaintiff] took a swing at you, you drilled him. Do you remember saying that?

"A.  Yes, sir, I do.

"Q.  And you denied being in control of yourself at the time?

"A.  The more I look back on it, yes, sir, I do."

On further examination, however, he said:

"Q.  And you leaned into him and went for his jaw, is that correct?

"A.  I just leaned into him and did what I thought was defending myself.

"Q.  Do you deny going for his jaw?

"A.  I don't deny anything. I know that I hit him in the face.

"Q.  And you intended to hit him in the face?

"A.  Being that close, yes, sir, I guess I did.

"Q.  Okay. You figured as long as he touched you it was time for you to use force, is that right?

"A. After he had touched me, yes.

"Q. And once he touched you, you felt it was time to take action?

"A. Yes.

"Q. And you hit him because he hit you?

"A. Yes.

"Q. And you meant to hit him, just not so hard, is that right?

"A. Yes, I just meant to hit him after he touched me.

"Q. And the reason you didn't go to town on him was because you stopped him with one punch, is that correct?

"A. I used what I thought was necessary force. I don't know what would have happened if I wouldn't have stopped him with one punch."

Other witnesses similarly painted conflicting portraits of Hoyt's condition and apparent intentions. Some testified that he smelled of alcohol, was belligerent and appeared to be very intoxicated. Others, in contrast, testified that Hoyt's speech was not slurred, that he exhibited no problems with physical control and did not appear intoxicated.

At trial, the parties also contested whether Hoyt actually resided permanently with his parents at the time of the fight. Plaintiff introduced testimony of Hoyt's parents that Hoyt was, in fact, permanently in residence at their home during that time. In an attempt to controvert that point, defendant offered the testimony of Maureen Battles, a Washington County Department of Community Corrections Officer who conducted the presentence investigation following Hoyt's conviction for third-degree assault. Battles reviewed her report and notes that she took in preparation of the report and, on the basis of those records, testified that Hoyt told her that he moved home *after* the altercation with plaintiff:

"Q. Ms. Battle[s], have you reviewed your notes and the presentence report?

"A. Yes, I have.

"Q. What did — based on the notes, based on your handwritten notes alone, what did Mr. Hoyt tell you about his living situation?

"A. What I have written down exactly, and this is to the best of my recall, I have to rely on these notes, is he said he was back home after the incident."

Plaintiff, however, objected to the introduction of that evidence, and the trial court sustained the objection.

At the conclusion of plaintiff's case and at the conclusion of the trial, defendant moved for a directed verdict.[1] The trial court denied the motions, entered findings of fact and a money judgment in favor of plaintiff. The trial court's findings are brief:

"1. The plaintiff has proven by a preponderance of the evidence that * * * Hoyt is an insured under the policy of insurance issued by defendant * * *.

"2. The plaintiff has proven by a preponderance of the evidence an occurrence under the terms of the policy of insurance issued by defendant * * *.

"3. Defendant * * * has failed to prove by a preponderance of the evidence that the conduct of * * * Hoyt qualifies for either of the exclusions in its policy found in paragraph[s] 3.a and 3.b.

"The Court finds that there is coverage under the defendant's homeowner's policy for the injuries suffered by [plaintiff] * * *."

Although it is not clear from the sparse written findings, the trial court's oral findings issued from the bench make clear the basis for its decision:

"I'm of the strong belief, and I attach great weight to this voluntary drinking, and I think the Court can well consider it, voluntary intoxication. I think its a fact that the Court can consider. I just don't see how [Hoyt] can have formed an intent to do this.

"* * * * *

"This thing all happened very fast. This man was very drunk. He was very drunk. He didn't have any — I see no deliberation, no thought, no evidence of any thought by him that he's going to be doing something like this.

---

[1] The motion is more correctly labeled a motion for a judgment of dismissal. *See* ORCP 54 B(2). However, because the motion clearly apprised the trial court of the issues raised, the labeling of the action is not of consequence. *See Falk v. Amsberry*, 290 Or 839, 845, 626 P2d 362 (1981).

"I think this was the booze talking all the way through this thing.

"* * * * *

"[Y]ou think it all comes back to the question of whether this fella' really intended to do what he did, and I just can't see where he intended it where he's in such a state.

"* * * * *

"[Hoyt] was drunk. He was drunk. He was not himself. And it couldn't have been intentional."

On appeal, defendant asserts that the trial court erred in concluding that there was an "occurrence" within the meaning of the policy, in concluding that neither of the coverage exclusions applies and in sustaining plaintiff's objection to the introduction of evidence that Hoyt was not an "insured."

We first address defendant's argument that the trial court erred in concluding that plaintiff's injuries resulted from an "occurrence," within the meaning of the policy. Defendant argues that, because Hoyt admitted that he expected or intended to harm plaintiff, it is undisputed that his fight with plaintiff was not an event "neither expected nor intended" by the insured, as the policy requires. Defendant further argues that, even if Hoyt's testimony is inconclusive as to his intent, his conduct is not. According to defendant, the nature of Hoyt's act of hitting plaintiff is such that the trial court should have inferred an intent to harm plaintiff as a matter of law. Finally, defendant argues that, even if the foregoing arguments do not establish Hoyt's intent to harm, the fact that he was convicted of third-degree assault establishes that fact beyond debate.

■   Whether the trial court correctly found that Hoyt was so intoxicated as to render him incapable of volition is a question of fact. *Safeco Ins. v. House*, 80 Or App 89, 96-97, 721 P2d 862, *rev den* 302 Or 86 (1986). We review the trial court's findings on that question for any competent evidence in the record. *Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984).

■   In the light of our limited standard of review, we cannot say that the trial court erred in concluding that Hoyt was so intoxicated as to have been incapable of volition.

Defendant is correct in noting that portions of Hoyt's testimony attest to an intent to hit plaintiff. However, other portions of his testimony are precisely to the contrary:

"Q. Did you intend to strike [plaintiff]?

"A. No, sir.

"Q. Did you intend to cause him injury?

"A. No, I did not."

He testified that, after plaintiff grabbed him and hit his face, Hoyt tried to break free and defend himself, and in the process he hit plaintiff in the jaw. He repeatedly testified that the entire incident happened very quickly, that he did not have time to think about his actions, that he was not in control of himself, and that he was just trying to defend himself. Moreover, there also is evidence from other witnesses that supports the trial court's finding that Hoyt was simply too intoxicated to have formed an intent to act.

Defendant acknowledges that Hoyt testified that he did not intend either to hit or to hurt plaintiff. Nevertheless, it argues that Hoyt's contrary testimony that he did intend to hit plaintiff must be taken as an admission, and that any inconsistent testimony must be construed to mean that, although *at first* Hoyt did not intend to hit plaintiff, he later did.

■ Defendant cites no authority — and we know of none — requiring the trial court or us to resolve inconsistencies in testimony in any particular fashion. Our function, instead, is to determine whether the trial court's decision is supported by any competent evidence, viewed in the light most favorable to the prevailing party. *Hall v. Gordon*, 284 Or 49, 51, 584 P2d 1374 (1978). Only if we can say affirmatively that there is no evidence at all may we reject the findings of a trier of fact. *Illingworth*, 297 Or at 694. In this case, there indisputably is evidence that Hoyt did not intend either to hit or to harm plaintiff. Defendant's assertion that we should construe that testimony to mean something else, that is, to construe it in favor of defendant, simply is not consistent with our standard of review.

■ Defendant alternatively argues that we should disregard Hoyt's statements that he did not intend either to hit or

to harm plaintiff, because, as a matter of law, witnesses should not be entitled to benefit from their own self-contradictory statements. In support of that argument, defendant cites *Rude v. Lehman*, 263 Wis 362, 57 NW2d 393 (1953), and *Atlanta Ry. & Power Co. v. Owens*, 119 Ga 833, 47 SE 213 (1904). Those decisions, however, are at odds both with our standard of review under Oregon law, *Illingworth*, 297 Or at 694, and with the majority rule on the subject:

> "A party may prevail even though the evidence produced to establish its case or defense is not harmonious and consistent throughout. Indeed, if that were the rule, there could seldom be success in an attempt to prove an ultimate fact or establish a defense. *The fact that a witness makes inconsistent statements with regard to the subject matter under investigation does not render the testimony nugatory or unworthy of belief. It is the province of the trier of fact to pass upon inconsistent statements and give or withhold assent to the truthfulness of the particular statement.* Although there is some authority to the contrary, it has been said that *inconsistencies in a witness's testimony go to credibility and do not affect the sufficiency of the evidence* or destroy the probative force of the testimony as a matter of law."

29A Am Jur 2d *Evidence* § 1443, at 825 (2d ed 1994). (Emphasis supplied; citations omitted.)

■ For similar reasons, we also must reject defendant's argument that, if not Hoyt's testimony, at least his conduct establishes an intention to harm plaintiff. According to defendant, some acts are so certain to cause harm that the intent or expectation of harm is inferred from the act itself. Although it is true that, in some cases, intent may be "inferred" as a matter of law, the Supreme Court has cautioned that

> "the court should only infer that the insured had a subjective intent to cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct."

*Allstate Ins. Co. v. Stone*, 319 Or 275, 279, 876 P2d 313 (1994).

Our decision in *Farmers Ins. Co. v. Limbocker*, 109 Or App 130, 818 P2d 527 (1991), *rev den* 312 Or 589 (1992), illustrates the application of that rule to facts similar to those in this case. In *Limbocker*, the insured, Limbocker, was asked

to leave a tavern at which he had consumed a number of mixed drinks. On his way out the door, he turned to the restroom. As he did, he heard someone say, "I'll throw the SOB out." Limbocker then felt someone tap him on the arm. He turned around, swinging his arms, and hit a person who was behind him. When the injured person sued Limbocker, the insurer brought an action for a declaration that it had no duty to defend, because Limbocker's conduct was intentional and, therefore, not a covered "occurrence" within the meaning of the policy. The trial court granted summary judgment for the insurer, and we reversed:

> "Although a trier of fact could conclude that Limbocker intended to injure whoever was behind him in the bar, it is not a necessary inference. * * * There was no act, such as sexual molestation or deceit, where intent to harm is inferred as a matter of law. * * * Viewing the record in the light most favorable to the non-moving party, we conclude that there is a genuine issue of material fact regarding intent * * *."

*Id.* at 135. (Citations omitted.)

Similarly, in this case, defendant urges upon us *a* reasonable inference that may be drawn from Hoyt's conduct, but not *the only* inference that may be drawn therefrom. Considering the amount of alcohol that he had consumed, the time within which he consumed it, along with his own testimony that he was intoxicated, as well as the testimony of others that he was extremely so, we cannot say that the trial court erred in concluding that Hoyt's conduct did not establish, as a matter of law, that he intended his actions.

■ We turn to defendant's argument that the trial court erred in rejecting defendant's defense that, even if plaintiff's injuries resulted from an "occurrence," his claim nevertheless is subject to either of two exclusions. The first of those exclusions provides that defendant will not cover bodily injury "caused intentionally by * * * an **insured**." (Boldface in original.) To prevail on that defense, however, defendant must show that Hoyt "intentionally" caused plaintiff's injuries. As we have described, the trial court found, as a matter of fact, that Hoyt was incapable of volition and, therefore, did not intend to cause plaintiff's injuries. For the reasons we also have already described, the trial court did not err in so finding.

■    The second of the asserted exclusions provides that defendant will not cover bodily injury

> "resulting from any **occurrence** caused by an intentional act of an **insured person** where the results are reasonably foreseeable."

(Boldface in original.) Defendant argues that the evidence shows that Hoyt at least intended to strike plaintiff, and that it was reasonably foreseeable that injury would result. Here again, however, the trial court found that Hoyt was incapable of volition at all, and that plaintiff's injuries did not result from an "intentional act." There is evidence to support that finding.

■    Defendant argues that, even if the testimony does not establish that the second exclusion applies, the fact that Hoyt was convicted of third degree assault conclusively establishes that it does. According to defendant, a necessary consequence of the conviction is the determination that Hoyt intended to hit plaintiff and that it was reasonably foreseeable that harm to plaintiff would result. Therefore, defendant concludes, plaintiff is collaterally estopped from asserting that Hoyt did not meet the conditions of the exclusion.

Defendant correctly states the general rule that an insured may be precluded from contending coverage is available if, in a prior case, the facts establishing that coverage is not available have necessarily and conclusively been determined. *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 160, 700 P2d 236 (1985); *Casey v. N.W. Security Ins. Co.*, 260 Or 485, 492, 490 P2d 208 (1971). The question in this case, however, is whether Hoyt's conviction, in fact, establishes that coverage is not available.

Our opinion in *Limbocker* is again instructive. In that case, Limbocker had pleaded guilty to assault in the fourth degree. The insurer argued that, because of the guilty plea, Limbocker was precluded from arguing that he was not subject to an exclusion for intentional conduct that foreseeably results in harm. The trial court agreed with the insurer and entered summary judgment against Limbocker.

We reversed, noting that, at best, Limbocker's plea established only that he acted "recklessly," which did not

establish either that he intended to harm the victim or that he acted intentionally. *Limbocker*, 109 Or App at 134.[2]

So, too, in this case, in which we are confronted with the same policy exclusion and nearly identical facts. Accordingly, Hoyt's conviction of third degree assault does not establish that he intended to hit plaintiff and, as a result, does not establish conclusively that the second exclusion applies. The trial court did not err in refusing to enter judgment in defendant's favor on the basis of the coverage exclusions.

Finally, we address defendant's assertion that the trial court erred in sustaining plaintiff's objection to the testimony of Battles, the corrections officer, who was prepared to testify on the basis of her presentence investigation that Hoyt was not, in fact, living with his parents at the time of plaintiff's injury. Plaintiff had objected to the introduction of testimony concerning Battles's presentence report on the ground that, under ORS 137.077, presentence report information is available only to the sentencing court, the Department of Corrections, the appellate courts on review of the sentence or petition for post-conviction relief and the district attorney. Defendant argues that ORS 137.077 does not support the trial court's exclusion of Battles's testimony.

ORS 137.077 provides:

"The presentence report is not a public record and shall be available only to:

"(1) The sentencing court for the purpose of assisting the court in determining the proper sentence to impose and to other judges who participate in a sentencing council discussion of the defendant. The sentencing judge may disclose information from the presentence report that is necessary to address the content of the report, examine the reasoning for a sentencing recommendation or to explain the reasons for the sentence imposed. Appellate judges may disclose information from the presentence report that is necessary for legal analysis of the case or to report the reasoning of the appellate court.

---

[2] The result in *Limbocker* is consistent with the Oregon Criminal Code, under which an intoxicated defendant may be found guilty of reckless conduct even though the defendant is entirely unaware of his or her actions or their consequences, because of the intoxication. ORS 161.125(2). The volitional act in such cases — a prerequisite for any criminal conviction, ORS 161.095(1) — is presumed to be the act of becoming intoxicated. *See* Criminal Law Revision Commission Commentary to ORS 161.125 (1971).

"(2)   The Department of Corrections, State Board of Parole and Post-Prison Supervision and other persons or agencies having a legitimate professional interest in the information likely to be contained therein. These agencies or persons may make the presentence report, or any reports based on the contents of that report, available to the victim.

"(3)   Appellate or review courts where relevant to an issue on which an appeal is taken or post-conviction relief sought.

"(4)   The district attorney, the defendant or the counsel of the defendant, as provided in ORS 137.079. The district attorney and counsel of the defendant may retain a copy of the presentence report as a part of the permanent records of the case. The district attorney and counsel of the defendant may disclose the contents of the presentence report to individuals or agencies when preparing for the sentencing of the defendant. 'Individuals and agencies' include victims, psychologists, psychiatrists, medical doctors and any other person or agency who may assist the state or the defendant at the time of sentencing."

That statute does not merely state an exception to the public records law. It provides that presentence reports are not public records at all. It prescribes a list of persons to whom the reports may be released. It further sets out specific conditions under which "contents of" or "information from" the reports — as opposed to the reports themselves — may be released.

Defendant does not argue that the subject of Battles's testimony is not "contents of" or "information from" a presentence report[3] or that permitting her to testify about that information falls within any of the circumstances under which disclosure of that information is permitted under the statute. Defendant nevertheless argues that ORS 137.077 does not afford a basis for exclusion of Battles's testimony about information contained in her presentence report, for two reasons.

_____

[3] Defendant does not, for example, argue that ORS 137.077 does not apply because Battles testified only from her notes and not from the presentence report, and we do not address that argument.

■   First, defendant argues that the statute is not a rule of evidence and therefore does not preclude the introduction of information contained in presentence reports at a civil trial. OEC 402 provides that "all relevant evidence is admissible, except as otherwise provided by the Oregon Evidence Code * * * or by Oregon statutory and decisional law." Thus, it is not necessary for a statute to have been embodied in the Evidence Code for it to have the effect of excluding evidence from admissibility.

■   Second, defendant argues that, under *In re Collins*, 308 Or 66, 775 P2d 312 (1989), the statute must be read to prohibit disclosure only of presentence reports themselves, not of information that may be contained in them. Defendant, however, ignores the fact that *Collins* was decided under a different version of the statute than applies in this case. When *Collins* was decided, *former* ORS 137.077 provided only:

"The presentence report is not a public record and shall be available only to:

"(1)   The sentencing court for the purpose of assisting the court in determining the proper sentence to impose and to other judges who participate in a sentencing council discussion of the defendant.

"(2)   The Department of Corrections, State Board of Parole and other persons or agencies having a legitimate professional interest in the information likely to be contained therein.

"(3)   Appellate or review courts where relevant to an issue on which an appeal is taken or post-conviction relief sought.

"(4)   The district attorney, the defendant or the counsel of the defendant, as provided in ORS 137.079."

That version of the statute only prohibited disclosure of a presentence report and said nothing about disclosure of information that may be contained in such a report. Nevertheless, when then-District Attorney Collins disclosed certain information from a presentence report to a victim of a crime, the Oregon State Bar initiated disciplinary proceedings against him for violating *former* ORS 137.077. According to the Bar, the statute prohibited disclosure of both presentence reports and information contained in

them to any persons and under any circumstances not enumerated in the statute. The Supreme Court disagreed. It held that, because the statute contained no language prohibiting the disclosure of information contained in presentence reports, Collins had not violated *former* ORS 137.077 by disclosing such information to a crime victim. The court commented that,

> "[h]ad the legislature intended to prohibit disclosure of * * * information, it could (within constitutional limits) easily have done so."

*Collins*, 308 Or at 71.

In 1989, the legislature did just that. Or Laws 1989, ch 408, § 1. Indeed, in direct response to the then-pending *Collins* litigation, the legislature amended ORS 137.077 to provide that, under certain conditions, information contained in presentence reports may be disclosed. The sentencing judge, for example, is permitted to disclose information from a presentence report when necessary to explain the reasoning for a sentence. ORS 137.077(1). Appellate courts are permitted to refer to information from the presentence report when necessary to dispose of the appeal. *Id.* The Department of Corrections and other agencies may disclose the report, or information contained in the report, to crime victims. ORS 137.077(2). The district attorney also may disclose the contents of the report to crime victims. ORS 137.077(4). The district attorney and defense counsel likewise may disclose information in the report to psychologists, psychiatrists, medical doctors and other persons "who may assist the state or the defendant at the time of sentencing." *Id.*

We are not, therefore, controlled by *Collins*, because that case construes a statute that no longer exists. We are instead controlled by the language of the current version of ORS 137.077, which sets out the circumstances under which both presentence reports and information they contain may be disclosed. Because defendant makes no argument that the disclosure of information from the presentence report that Battles prepared falls within any of the circumstances under which disclosure is permitted, Battles's testimony about the contents of her report was

impermissible, and the trial court did not err in excluding it.

Affirmed.