Argued and submitted January 27, affirmed May 3, petition for review denied
August 15, 2006 (341 Or 244)

Andrew DAVIS,
*Appellant,*

*v.*

COUNTY OF CLACKAMAS,
Milton Brown, Mob Properties,
Michael Edel, and Jessica Keagle,
*Respondents,*

*and*

Joy Lynn JESSE,
*Defendant.*

CV0309-0555; A127072

134 P3d 1090

Dylan R. Lawrence argued the cause for appellant. With him on the briefs was Sam Hochberg & Associates.

Edward S. McGlone III, argued the cause and filed the brief for respondent County of Clackamas.

Leslie A. Kocher-Moar filed the brief for respondents Milton Brown, MOB Properties, Michael Edel, and Jessica Keagle. With her on the brief were Robert D. Scholz, Sherrill L. Dye, and MacMillan, Scholz & Marks, P.C.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff appeals in this negligence action after the trial court granted summary judgment to defendants landowners, renters, and Clackamas County. Plaintiff argues that summary judgment was improper because there exists a genuine issue of material fact as to the cause of the automobile-motorcycle accident that injured plaintiff. We affirm.

Because we are reviewing the grant of summary judgment, we state the facts at the time of the accident in the light most favorable to plaintiff, the nonmoving party, and draw all reasonable inferences in his favor. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). The accident giving rise to plaintiff's action occurred when plaintiff was riding his motorcycle westbound on Jennings Avenue in Clackamas County and an automobile operated by defendant Jesse drove from an intersecting street into his lane of traffic, resulting in a collision between the vehicles.[1] Defendant Brown owned the real property at the corner of the intersection, and defendants Edel and Keagle were the tenants of that property. Plaintiff's theory of liability against defendants Brown, Edel, Keagle, and Clackamas County is that they negligently failed to clear vegetation that impeded Jesse's view as she entered the intersection.

The evidence in the summary judgment record on the issue of causation consists of a police report prepared by Officer Voss, who responded to the accident scene; Voss's affidavit; Jesse's affidavit; Jesse's deposition testimony; and plaintiff's counsel's affidavit. The police report states that Jesse

"told me that she stopped for the stop sign on Dagmar Rd. at Jennings Av. Ms. Jesse said that she looked both ways and did not see vehicles approaching Dagmar on Jennings from the east. Ms. Jesse said that she did see a van approaching from the west on Jennings. Ms. Jesse told me that [she] pulled into the intersection to turn left onto Jennings, saw

---

[1] Defendant Jesse is not a party to this appeal.

that motorcycle and stopped. Ms. Jesse said that as she stopped[,] the motorcycle hit her Jetta.

"Ms. Jesse said that she does not know if the motorcycle was speeding. Ms. Jesse told me that a bush was in the way and obscured her view of vehicles approaching Dagmar on Jennings from the east."

In her deposition, Jesse testified as follows:

"A. And I eased out there about, oh, two feet. And I looked and I saw nothing coming, and so I started out into the intersection.

"And then I saw somebody on a motorcycle to my left coming over the hill at a fast rate of speed. I knew the only thing that I could do was stop and that hopefully he would go around me, but that didn't happen. And I was hit in the front wheel well of my car on the left-hand side.

"Q. Okay. When you first approached the intersection of Jennings and Dagmar, did you come to a complete stop?

"A. I did.

"Q. Then did you have to pull out a little bit farther to see?

"* * * * *

"A. Yes.

"* * * * *

"Q. When you are stopped at Dagmar waiting to get out onto Jennings, the very first stop, what is blocking your view to your left?

"A. A bamboo—No, it's a butterfly bush.

"* * * * *

"Q. Is the butterfly bush the reason you had to pull farther out into the intersection to see where you were going?

"A. Yes.

"* * * * *

"Q. Okay. When you first approached the intersection of Jennings and Dagmar, did you come to a complete stop?

"A. I did.

"Q.    Then did you have to pull out a little bit farther to see?

"* * * * *

"A.    Yes.

"* * * * *

"Q.    When you first stop your car, do you have a clear view down Jennings to your left?

"A.    No.

"Q.    Okay. Is that why you needed to pull forward a little bit more before you proceeded into the intersection?

"A.    Yes.

"* * * * *

"Q.    Okay. Do you remember telling the police officer that a bush was in your way and obscured your view of vehicles approaching?

"A.    I think I did.

"Q.    Okay. Is that still accurate for you?

"A.    Yes.

"* * * * *

"Q.    You testified that as you came to the intersection, you were on Dagmar—

"A.    Right.

"Q.    —correct? You first stopped—

"A.    Right.

"Q.    —and could not see, correct?

"A.    Right.

"Q.    And then you moved forward some distance and stopped again, correct?

"A.    Correct.

"Q.    All right. And at that point, your car was not in the intersection, was it?

"A.    No.

"Q. Okay. And at that point, were you able to clearly see to your left * * * down Jennings?

"A. I was.

"Q. You've made mention of a butterfly bush.

"A. Right.

"Q. All right. As you sit here today under oath, are you able to say that that butterfly bush in any way impaired your vision as you looked left down Jennings?

"A. No."

In her affidavit, Jesse averred that, before she drove into the intersection, her "view to the left and of plaintiff was not obstructed by the bush." Plaintiff also submitted an affidavit from Voss stating that Jesse "told me that a bush on the side of the road obscured her view of the oncoming traffic" and that "I independently recall Ms. Jesse telling me that the bush obscured her view of the oncoming motorcycle. I do not recall the exact words that she used when she told me this." The affidavit also stated that Voss observed neighbors at the accident scene trying to tear branches off the bush and that they told him that the bush had been responsible for other accidents at the intersection. Finally, the affidavit stated that, in Voss's opinion, the bush was a contributing cause to the accident. Also, plaintiff's attorney asserted in an affidavit that he would present testimony from an unnamed witness that the bush "obstructed the view of drivers at that intersection," as well as testimony from an unnamed accident reconstructionist regarding the issue of causation.

Defendants moved for summary judgment, arguing that, based on Jesse's statement that the bush did not block her view as she entered the intersection, there was no genuine issue of material fact regarding any omission on their part that caused the accident and that they were therefore entitled to summary judgment as a matter of law. At the hearing on the motion, defendants moved to strike plaintiff's attorney's affidavit. They also moved to strike Voss's affidavit, asserting that it was filed untimely in light of the requirements in ORCP 47 and that the statements in it constituted inadmissible hearsay evidence. In addition, they argued that there was no internal inconsistency between

Jesse's deposition testimony and her affidavit if her statements in her deposition were read in their proper context.

In opposition to defendants' motion, plaintiff countered that Jesse's testimony in her deposition was internally inconsistent, because she "actually testified that the bush did obscure her view" and that "she had to pull into the intersection to get a clear view." In plaintiff's view, the purported inconsistencies in Jesse's deposition testimony create a genuine issue of material fact that precluded summary judgment. As to defendants' objection based on the timeliness of Voss's affidavit, plaintiff responded that the trial court was authorized under ORCP 47 F to allow the submission of the affidavit beyond the time for a response to a motion for summary judgment and that the statements in it, by themselves, create a genuine issue of material fact.

The trial court granted defendants' motion to strike plaintiff's attorney's affidavit. Plaintiff does not assign that ruling as error and, therefore, the affidavit is not before us in the record on appeal. The court did not specifically rule on defendants' timeliness objection to Voss's affidavit but it noted that Voss's opinion of the bush's role in the accident was derived exclusively from his recollection of Jesse's "statement about there being a bush that obscured her view again at some point during this transaction." The court also determined that Voss's observation of people tearing branches off the bush was legally insufficient to show that the bush played a role in this particular accident. Finally, the trial court held that there was no inconsistency between Jesse's statement to Voss at the scene and her deposition testimony, because it was "clear that she approached this intersection, stopped at a position where the bush obstructed her view, then moved forward a short distance and stopped again prior to entering the intersection." Accordingly, the trial court granted summary judgment to defendants.

On appeal, the parties reiterate their arguments made to the trial court. We turn first to the relevant legal principles. The adverse party to a summary judgment motion "has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." ORCP 47 C. The quoted language

was added to the rule by the legislature in 1999 with the intent to "federalize" the Oregon rule so that it mirrored FRCP 56. Tape Recording, House Committee on Judiciary, Civil Law Committee, HB 2721, Apr 21, 1999, Tape 119, Side B (statement of Rep Max Williams). According to the legislative history underlying the amendment, it was intended to implement a burden shifting process similar to the federal rule as defined in *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 US 574, 106 S Ct 1348, 89 L Ed 2d 538 (1986), and as contemplated in *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243 (1996), *aff'd on other grounds*, 325 Or 404, 939 P2d 608 (1997). Tape Recording, House Committee on Judiciary, Civil Law Committee, HB 2721, Apr 21, 1999, Tape 119, Side B (statement of Rep Max Williams). In *Matsushita*, the Court stated:

> "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' "

*Matsushita*, 475 US at 586-87 (emphasis in original; citations omitted; footnote omitted).

Representative Williams explained that the amendment to ORCP 47 C would create a burden shifting analysis so that "the adverse party to the motion will be forced to come forward with some proffer of evidence to support its case if it has to bear that burden at the time of trial." Tape Recording, House Committee on Judiciary, Civil Law Committee, HB 2721, Apr 21, 1999, Tape 119, Side B (statement of Rep Max Williams). We conclude therefore that under ORCP 47 C, as amended, plaintiff had the burden of offering admissible evidence to create a genuine issue of material fact as to causation, once defendants put that element of plaintiff's case in issue. It follows that, to preclude summary judgment, it is not enough for plaintiff to impeach Jesse's testimony. Rather, plaintiff must offer admissible evidence at the summary judgment stage that creates a genuine issue of material fact as to causation.

■■     In light of that understanding, we consider the evidence relied on by plaintiff on appeal. We turn initially to Voss's affidavit and the evidence contained therein. Based on the analysis that follows, we conclude that we need not reach the timeliness issue because we agree with the trial court that the contents of the affidavit do not create a genuine issue of material fact regarding causation. First, the officer's opinion as to how the accident occurred is not admissible evidence because he did not have personal knowledge of the circumstances that caused it. OEC 602; OEC 701.[2] Nor does Voss's opinion as to what caused the accident qualify as expert testimony because, in reaching his opinion, he did not apply specialized knowledge such as that of an accident reconstructionist. OEC 702;[3] *see also Phomvongsa v. Phounsaveth*, 72 Or App 518, 521, 696 P2d 567, *rev den*, 299 Or 203 (1985). Similarly, Voss's testimony regarding the neighbors' actions in tearing branches off the bush and their statements about the circumstances of other accidents at the intersection are not admissible to establish causation regarding this particular accident because there is nothing in the record that demonstrates that the neighbors had firsthand knowledge about Jesse's field of vision as she entered the intersection.

■     Next, we turn to Voss's statement in his affidavit that "I independently recall Ms. Jesse telling me that the bush obscured her view of the oncoming motorcycle" and

---

[2] OEC 602 provides:

"Subject to the provisions of ORS 40.415 [regarding expert testimony], a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness."

OEC 701 provides:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

"(1)  Rationally based on the perception of the witness; and

"(2)  Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

[3] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Jesse's statement in Voss's police report that the "bush was in the way and obscured her view of vehicles approaching Dagmar on Jennings from the east." Plaintiff argues that Voss's testimony is admissible to prove that Jesse's view was impeded by the bush. Defendants respond that the police report is inadmissible hearsay and that Voss's averment in his affidavit about Jesse's statements to him is not admissible as substantive evidence on the issue of causation because Jesse's statements cannot be imputed to the defendants as the admission of a party opponent.[4] Because plaintiff's evidence of Jesse's statements in Voss's affidavit and the police report are cumulative, we will not discuss the admissibility of the police report and initially focus only on the issue of the admissibility as substantive evidence of Voss's statement in his affidavit about what Jesse told him.

■    In *State v. Derryberry*, 270 Or 482, 486-87, 528 P2d 1034 (1974), the Oregon Supreme Court held that, in accordance with the "well-established" common-law rule, "testimony of prior inconsistent statements by a witness is admissible solely for purposes of impeachment, and not as substantive evidence." When the evidence code was adopted in 1981, evidence of some prior inconsistent statements became admissible both to impeach the witness and to prove the truth of the matter asserted. Laird C. Kirkpatrick, *Oregon Evidence* § 801.01, Art VII-10 (4th ed 2002); *see, e.g.*, OEC 801(4)(a) (statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: (A) Inconsistent with the testimony of the witness and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition"). However, the legislature did not change the common-law rule in Oregon expressed in *Derryberry*. *See also State v. Arnold*, 133 Or App 647, 650, 893 P2d 1050 (1995) (holding that because a prior inconsistent statement was not made under oath, it

---

[4] OEC 802 provides that "[h]earsay is not admissible except as provided in ORS 40.450 to 40.475 or as otherwise provided by law." OEC 801(3) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(4)(b)(A) provides that a statement is not hearsay if the statement is offered against a party and is "[t]hat party's own statement, in either an individual or a representative capacity[.]"

was not admissible as substantive evidence). We conclude, therefore, that, although Voss's testimony about what Jesse told him was admissible to impeach her credibility, it did not constitute substantive evidence that Jesse's view was obscured by the bush. At most, Voss's testimony would have permitted a jury to disbelieve Jesse's testimony. As we have previously observed, plaintiff has the burden under ORCP 47 C to offer substantive evidence that creates a genuine issue of material fact. We conclude that Voss's affidavit testimony was legally inadequate to accomplish that task, as was his police report, even if the latter was otherwise admissible.

■      Finally, we turn to the import of Jesse's deposition testimony. Plaintiff argues that a reasonable factfinder could have found from Jesse's testimony that the bush blocked her view of plaintiff's motorcycle. The premise to plaintiff's argument is that Jesse's deposition testimony was internally inconsistent. In *Hunter v. Farmers Ins. Co.*, 135 Or App 125, 135, 898 P2d 201 (1995), we observed that a party may prevail even though the evidence produced to establish the party's case is based on testimony that is not harmonious or consistent. It is the province of the trier of fact to determine the weight to be given to a witness's testimony, and inconsistencies do not affect the sufficiency of the evidence or defeat its probative force as a matter of law. The question in this case thus reduces to whether Jesse's deposition testimony is internally inconsistent, thus permitting a reasonable trier of fact to find that the bush was a causative factor of the accident.[5] If such a genuine issue of material fact arises from Jesse's deposition testimony, then summary judgment for defendants is precluded, and the trial court erred.

To be "inconsistent," a statement must contradict or negate another statement. *Cf. Hatley v. Stafford*, 284 Or 523, 533-34, 588 P2d 603 (1978) (stating that, to be "inconsistent" within the meaning of the parol evidence rule, the oral term must contradict an express provision in the writing). In the context of inconsistency in prior statements used for

---

[5] *See, e.g., Rigelman v. Gilligan*, 265 Or 109, 120, 506 P2d 710 (1973) (holding that exclusion of allegedly inconsistent prior statement was not prejudicial because statement was not directly inconsistent with statement made at trial).

impeachment purposes, any material variance between the testimony of the witness and the witness' other statements will suffice to constitute an inconsistency. *State v. Johanesen*, 319 Or 128, 135 n 6, 873 P2d 1065 (1994); *see also Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 576 n 3, 919 P2d 39 (1996) (citing the definition in *Johanesen* for purposes of ORCP 47).

Our review of Jesse's deposition testimony persuades us that her testimony was not internally inconsistent regarding whether the bush impaired her view of plaintiff's motorcycle at the time that she entered the intersection. Her statement that she remembered telling Voss that a bush obscured her view of approaching vehicles is not at material variance with her subsequent deposition testimony because her statements refer to different points in time. Jesse testified unequivocally in her deposition that she performed two complete stops and that the location of the bush prompted her to "pull out a little bit further to see." When she first stopped, she did not have a clear view of the intersection. She also testified that when she moved forward some distance and stopped again, she had a clear view. When Jesse's deposition testimony is read in its entirety, a reasonable factfinder could find only that Jesse pulled forward and stopped at a point where the bush did not block her view before she entered the intersection. It follows that because plaintiff did not offer substantive evidence in the summary judgment hearing that the bush was a causative factor of the accident, the trial court correctly granted summary judgment to defendants.

Affirmed.