Argued and submitted March 13, 2014, reversed in part and remanded
February 25, 2015

WSB INVESTMENTS, LLC,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

PRONGHORN DEVELOPMENT COMPANY, LLC,
a Delaware limited liability company;
and Pronghorn Golf Club, LLC,
a Delaware limited liability company,
*Defendants,*

*and*

Thomas C. HIX,
an individual;
Scott Denney, an individual;
Scott Walley, an individual;
Tiffany Clark, an individual;
and Reece Fulgham, an individual,
*Defendants-Respondents,*

*and*

RESIDENCE CLUB AT PRONGHORN VILLAS
CONDOMINIUMS OWNERS ASSOCIATION,
*Nominal Defendant-Respondent*

Deschutes County Circuit Court
11CV0180ST; A153339

344 P3d 548

Thomas A. Larkin argued the cause for appellant. With him on the briefs were John Spencer Stewart, Tyler J. Storti, and Stewart Sokol & Gray, LLC.

Stephen F. Deatherage argued the cause for respondent Scott Denney. With him on the brief was Bullivant Houser Bailey PC.

W. Michael Gillette argued the cause for respondents Thomas C. Hix, Scott Walley, Reece Fulgham, Tiffany Clark, and Residence Club at Pronghorn Villas Condominiums Owners Association. With him on the brief were David A. Anderson, William J. Ohle, and Schwabe, Williamson & Wyatt, P.C.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

LAGESEN, J.

**LAGESEN, J.**

Plaintiff WSB Investments, LLC owns an interest in a timeshare unit at the Residence Club at Pronghorn Villas Condominiums and, as a consequence of that ownership, is a member of the associated nonprofit homeowners association, the Residence Club at Pronghorn Villas Condominiums Owners Association (the Res Club). When the timeshare development, and the management of it by its uncompensated board of directors—Thomas Hix, Scott Denney, Scott Walley, Tiffany Clark, and Reece Fulgham (defendants)—fell short of plaintiff's expectations, plaintiff sued defendants, alleging claims for breach of contract, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, and declaratory relief. The trial court granted summary judgment to defendants on all claims.

We reverse in part, concluding that the trial court erred in granting summary judgment to defendants on some of plaintiff's allegations of breach of fiduciary duty.[1] Specifically, we conclude that plaintiff presented sufficient evidence regarding some of those allegations to permit a reasonable factfinder to find that some of the directors were grossly negligent in failing to discharge their duties "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances" or "[i]n a manner the director reasonably believes to be in the best interests of the corporation," in violation of ORS 65.357,[2]

---

[1] Although the complaint identifies multiple and disparate alleged breaches of fiduciary duty (each of which would appear to have a separate measure of damages), it does so under a single claim for breach of fiduciary duty asserted against all defendants. Because of the way that plaintiff pleaded the claim, we refer to plaintiff's breach-of-fiduciary-duty claim as a single claim and refer to particular alleged breaches as "allegations" of breach of fiduciary duty.

[2] As we recognized in *Goodsell v. Eagle-Air Estates Homeowners Assn.*, 249 Or App 639, 650, 278 P3d 133, *rev den*, 352 Or 665 (2012), the duties of an uncompensated director of a nonprofit corporation are defined by ORS 65.357. That statute provides, in relevant part:

"(1) A director shall discharge the duties of a director, including the director's duties as a member of a committee:

"(a) In good faith;

"(b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

"(c) In a manner the director reasonably believes to be in the best interests of the corporation."

ORS 65.357(1).

so as to render defendants subject to liability under ORS 65.369.[3]

## I. BACKGROUND

A. *Substantive Facts*[4]

    1. *Defendant Hix develops a new resort, defendants are appointed to the board of directors of the homeowners association for the resort's timeshare complex, and plaintiff purchases a timeshare.*

Defendant Hix is a real-estate developer. Hix decided to develop a destination resort in Central Oregon and, to that end, he and others formed High Desert Development Partners, LLC (High Desert Development)[5] to purchase land in Deschutes County. In 2004, a subsidiary of High Desert Development, Pronghorn Development Company, LLC

---

Although plaintiff did not cite ORS 65.357 as the source of its breach-of-fiduciary-duty claim in the complaint, defendants did not move to dismiss that claim under ORCP 21. Instead, they pointed out the potential deficiency in pleading in their motion for summary judgment. Although defendants argued at that time that plaintiff's failure to *plead* the breach-of-fiduciary-duty claim under the statute explicitly warranted dismissal, they did not argue that the specific facts alleged were insufficient to establish a breach of defendants' statutorily defined duties or suggest that any deficiency could not be cured by amending the complaint.

In response, plaintiff did not dispute that ORS 65.357 set forth defendants' duties, but argued that it had adequately pleaded violations of those duties. On appeal, defendants again note that the "fiduciary duties" owed to plaintiff are those duties defined by ORS 65.357; however, they do not reiterate their argument that plaintiff's failure to plead its claim under the statute requires dismissal. Accordingly, for purposes of this opinion, we treat plaintiff's claim for breach of fiduciary duty as a claim for breach of the duties defined by ORS 65.357.

[3] ORS 65.369 limits the civil liability of "qualified directors," including the uncompensated directors of certain nonprofit homeowners associations. ORS 65.369(3)(d). That statute provides that "[t]he civil liability of a qualified director for the performance or nonperformance of the director's duties shall be limited to gross negligence or intentional misconduct." ORS 65.369(1).

[4] The parties' summary-judgment evidence presents conflicting versions of the events that resulted in this case. However, because this appeal arises from the trial court's grant of summary judgment to defendants, we state the substantive facts in the light most favorable to plaintiff, the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997); *Davis v. County of Clackamas*, 205 Or App 387, 389, 134 P3d 1090, *rev den*, 341 Or 244 (2006). Because the parties filed cross-motions for summary judgment below, in stating the facts, we consider all evidence "submitted in support of and in opposition to both motions." *Citibank South Dakota v. Santoro*, 210 Or App 344, 347, 150 P3d 429 (2006), *rev den*, 342 Or 473 (2007).

[5] Hix had a 50 percent ownership interest in High Desert Development.

(Pronghorn Development),[6] broke ground on the 640-acre Pronghorn Resort (the resort). Hix envisioned the resort as a community of luxury timeshare units, condominiums, and custom villas, all situated along three premier golf courses and served by the Pronghorn Golf Club, LLC (the golf club).

As originally contemplated, the resort would have 16 buildings of timeshare units, among other types of accommodations. Each of the contemplated 16 buildings would contain four units, with each unit divided into 12 fractional interests, for a total of 768 fractional interests (16 buildings x 4 units/building x 12 fractional interests/unit). Each timeshare owner—that is, each owner of at least one fractional interest—would be a member of the homeowners association, the Res Club. The Res Club would be governed by a five-member board of directors and two documents: (1) the Declaration of Ownership and Fractional Plan for the Residence Club at Pronghorn Villas Condominiums (the Declaration), for which Pronghorn Development served as declarant; and (2) the Bylaws of the Residence Club at Pronghorn Villas Condominiums Owners' Association (the bylaws). Under the Declaration and bylaws, Pronghorn Development was to appoint the members of the initial five-member board of directors, but, at the first annual meeting of the Res Club, the Res Club members (including Pronghorn Development, as declarant) were to elect a new board.

In accordance with the Declaration and bylaws, Pronghorn Development appointed the members of the initial board of directors of the Res Club. Those members included Hix; Denney, an independent real-estate broker who had encouraged Hix to finance the development of the resort; Clark, vice president of sales and operations for High Desert Development; and Walley, who worked for Pronghorn Development in various roles, including as the company's director of finance.[7] At all times relevant to this case, Hix served as president of the Res Club.

---

[6] Pronghorn Development was owned entirely by High Desert Development before July 2005. After that date, Morgan Stanley became an equity investor with a 50 percent ownership interest in Pronghorn Development.

[7] The initial board also included Brian LaGrange, who is not named as a defendant in this action.

By 2005, Pronghorn Development had completed four of the 16 anticipated timeshare buildings, for a total of 192 fractional interests. The same year, plaintiff purchased a 12/12 interest in Res Club Unit No. 208 for $1,626,000, and became a member of the Res Club as a result.

Around the time of plaintiff's purchase, Pronghorn Development began facing financial difficulties in connection with the resort. Those financial difficulties resulted in a number of different acts and omissions by Pronghorn Development and defendants over the next several years that affected the Res Club and its members and, ultimately, resulted in this legal action.

> 2. *Hix and defendants, in contravention of the Declaration and without full disclosure to all Res Club members, agree to lease, rather than own, the common furnishings for the Res Club after Pronghorn Development is unable to purchase them.*

Shortly before plaintiff's purchase of its timeshare, Hix and Pronghorn Development confronted the task of furnishing the timeshare buildings. The Declaration provided that the "common furnishings" of each unit, including all furniture, appliances, electronics, and other personal property, would be owned by the Res Club. At that point in time, however, defendants did not have the money available to purchase the requisite furnishings. As a result, common furnishings were not purchased for the timeshare units and conveyed to the Res Club as the Declaration contemplated. Instead, in order to obtain the money to purchase the furnishings, Hix, acting on behalf of a subsidiary of Pronghorn Development known as Pronghorn Investors, LLC (Pronghorn Investors), arranged to finance the purchase of the common furnishings for the Res Club through a capital lease arrangement with a third-party leasing company, Pacific Financial Company (Pacific). Under that arrangement, Pacific purchased the common furnishings from the vendors, and Pronghorn Investors agreed to lease the furnishings back from Pacific for a monthly fee. Rather than documenting the financing transaction as a loan from

Pacific to Pronghorn Investors, however, the parties documented it as a sale-leaseback agreement; that is, as the purchase of the common furnishings by Pacific from Pronghorn Investors, and Pronghorn Investors' subsequent agreement to lease back those furnishings.

Recognizing that the Declaration required that the common furnishings be owned by the Res Club and would not accommodate any kind of lease arrangement, Hix and Denney authorized an amendment to the Declaration in early 2006. The amendment stated that the common furnishings "will be owned *or leased*" by the Res Club. (Emphasis added.) Although the amendment recited that it was adopted under the procedures spelled out in the Declaration, and had been approved by 75 percent of the membership of the Res Club, defendants did not, in fact, submit the amendment to the members for their approval as required by the plain terms of the Declaration.[8]

After Hix and Denney purported to amend the Declaration to allow the Res Club to lease, rather than own, the common furnishings, Hix, Denney, Walley, and Clark, acting on behalf of the Res Club, authorized Hix to sublease the furniture from Pronghorn Investors on December 7, 2006. Defendants did not disclose the lease arrangement with Pacific or the sublease from Pronghorn Investors to the nondeclarant members of the Res Club. Those transactions did not come to light until several years later, after Pronghorn Investors failed to make lease payments to Pacific. At that point, Pacific sued to repossess the Res Club's common furnishings and obtained a judgment in its favor. Notwithstanding those problems with the common furnishings, defendants did not pursue any remedies that the Res Club might have against Hix, Pronghorn Investors, or Pronghorn Development.

---

[8] Article XVI(1) of the Declaration provides that the document may be amended only with (1) notice of the subject matter of the proposed amendment included in the notice of any meeting at which the proposed amendment is to be considered, (2) a resolution for the adoption of the proposed amendment contained in the notice, and (3) adoption of the resolution with the assent of 75 percent of the total voting interests of the nondeclarant owners and the approval of the declarant.

3. *Pronghorn Development completes the next phase of the planned Res Club buildings but elects to sell those units as traditional condominiums, rather than as timeshares, and therefore does not place those buildings into the Res Club.*

After completing the first four buildings of the planned timeshare accommodations in 2005, Pronghorn Development constructed two more buildings that it had originally intended to place into the Res Club. After Pronghorn Development completed those two buildings, however, it decided that the units in those buildings would be more marketable as traditional condominiums than as timeshares. Based on that decision, Pronghorn Development capped the number of buildings in the Res Club at four and converted the two new buildings, buildings 5 and 6, into "the Residences" condominiums, establishing a separate homeowners association for those condominiums. Hix and defendants did not seek to compel Pronghorn Development to include buildings 5 and 6 in the Res Club, or otherwise object to the decision to treat buildings 5 and 6 in that manner.

4. *Pronghorn Development fails to pay the assessments that it owes to the Res Club.*

Pronghorn Development, as the owner of 26 unsold fractional interests in the Res Club, as well as seven unsold units in the Residences, retained the responsibility to pay each respective homeowners association the reserve and operating assessments for those unsold interests. On more than one occasion, however, Pronghorn Development failed to timely pay the assessments due the Res Club, because it did not have the funds available. As a result, the amount in arrears at one point exceeded $1 million, but defendants did not initiate a collection action against Pronghorn Development.

5. *Hix and Walley load expenses disproportionately onto the Res Club; Denney acquiesces in their conduct.*

One strategy that Hix and Walley adopted for addressing Pronghorn Development's financial difficulties,

and the consequences that those difficulties had for other parts of the resort, was to load expenses onto the Res Club. Specifically, Hix and Walley "tr[ied] to figure out how to load expenses" from the golf club, which provided services to both the Res Club and the Residences, onto the Res Club in order to minimize the operating deficits that Pronghorn Development bore responsibility for. To that end, defendants routinely permitted the Res Club to be billed for thousands of dollars of unidentified "services," designated simply as "labor" or "other," in addition to charges for a wide range of identifiable services—including front desk services, housekeeping, landscaping, security, and maintenance work orders. Although the charges for those unidentified services were among the more expensive line items billed to the Res Club—and represented between 82 percent and 100 percent of the total cost of those services delivered across the resort—defendants were not able to identify what particular amenities were included within the charges or otherwise explain why they should be attributable to Res Club activities. And, even where charges billed to the Res Club were attributed to an identifiable service, for example, maintenance and repairs, those charges included—on at least one occasion—the cost of such services performed on behalf of the Residences homeowners association, rather than the Res Club.

Denney was aware of what Hix and Walley were doing, and he asked Hix if it was permissible for them to load resort expenses onto the Res Club. Hix responded, "We can do whatever we want." Because Hix "controlled [Denney's] monthly income" through a consulting agreement, Denney refrained from disclosing Hix and Walley's conduct to anyone else or otherwise pursuing corrective action.

6. *Defendants misuse Res Club reserve funds.*

As a consequence of both the amount of operating expenses billed to the Res Club and Pronghorn Development's failure to pay its share of the operating assessments, the Res Club's operating fund was not sufficient to cover the operating expenses that it owed. To cover those operating expenses, defendants began to use money from the Res Club's reserve fund, in contravention of both

state statute[9] and the Res Club's own bylaws.[10] In 2007, the Res Club's bookkeeper and business manager informed Hix and Walley that the practice was both unlawful and a breach of the bylaws, and directed them to stop misusing the reserve funds. Nonetheless, defendants continued to authorize the use of reserve funds for operating expenses over the next few years.

In addition to using Res Club reserve funds to cover the Res Club's operating expenses, at one point, Hix tapped those funds to pay the expenses of a separate entity, the golf club. In early 2009, Hix transferred $85,000 in funds from the Res Club's reserve account to an account belonging to the golf club. Explaining the transfer to Denney, Hix stated that he "had to steal money from [the Res Club] to pay the [golf club] payroll this week." Again, Denney did not disclose that misuse of funds to anyone else or take any other kind of corrective action.

7. *Defendants fail to hold elections to bring a non-declarant member onto the board.*

In addressing the financial issues confronting the resort, defendants failed to follow through with other of their obligations as members of the Res Club board of

---

[9] A provision of the Oregon Condominium Act, ORS 100.175(7)(a), provides that generally "the reserve account is to be used only for the purposes for which reserves have been established and is to be kept separate from other funds."

[10] Article VIII(3)(b) of the bylaws provides, in full:

"The Board shall not expend funds designated as reserve funds for any purpose other than repair, restoration, replacement, or maintenance of, or litigation involving the repair, restoration, replacement, or maintenance of, major components of the Condominium Property or Association Property which the Association is obligat[ed] to repair, restore, replace, or maintain and for which the reserve fund was established. The Board may authorize the temporary transfer of money from a reserve fund to the Association's operating fund to meet short-term cash-flow requirements or other expenses, provided the Board has made a written finding, recorded in the Board's minutes, explaining the reasons that the transfer is needed, and describing when and how the money will be repaid to the reserve fund. The transferred funds shall be restored to the reserve fund within one (1) year of the date of the initial transfer, except that the Board may, upon making a finding supported by documentation that a temporary delay would be in the best interests of the Owners, temporarily delay the restoration. The Board shall exercise prudent fiscal management in maintaining the integrity of the reserve account, and shall, if necessary, levy a special assessment to recover the full amount of the expended funds within the time limits required by this Section."

directors. In particular, the Declaration and bylaws specified that, at the first annual meeting of the Res Club, the members (including Pronghorn Development, as declarant) would elect a new board. The new board was required to have at least one director elected solely by nondeclarant members. Defendants never held an election and, accordingly, never brought a nondeclarant director onto the board. Instead, Denney and Clark continued to serve until 2010, when they resigned or were removed upon learning of Hix's misuse of funds belonging to a charitable foundation connected to the resort. Hix served as president of the board until he resigned in February 2012, and Walley served until April 2012. Fulgham, who was not appointed to the board by Pronghorn Development until fall of 2010, also served on the board until 2012.[11]

## B. *Procedural Facts*

In 2012, plaintiff sued defendants—Hix, Denney, Walley, Clark, and Fulgham—among others.[12] Plaintiff alleged that, as a result of their acts and omissions on the Res Club board, defendants were each individually liable for (1) breach of contract and violation of the Declaration and bylaws, (2) breach of fiduciary duty, (3) negligent misrepresentation, and (4) unjust enrichment.[13] Plaintiff also asserted a claim for declaratory relief and an accounting. Plaintiff moved for partial summary judgment on its claim for breach of contract and violation of the Declaration and bylaws, as well as on its claim for breach of fiduciary duty.

---

[11] Besides serving on the Res Club board of directors, Hix, Denney, Walley, and Fulgham each also served on the boards of the three other homeowners associations at the resort: the Residences Condominiums at Pronghorn (for traditional condominiums), the Villas at Pronghorn (for townhomes), and the Pronghorn Community Association, Inc. (for single-family homes).

[12] Plaintiff also sued Pronghorn Development, the golf club, and the Res Club. In February 2012, however, the assets of the Pronghorn Resort were purchased by the Resort Group, a nonparty, making Pronghorn Development and the golf club "defunct entities" by the summary judgment stage of the case. Only the claims against the Res Club board members are at issue on appeal.

[13] Plaintiff also alleged that Hix was individually liable for breach of the purchase-and-sale agreement. Plaintiff does not pursue that claim on appeal, and we do not discuss it.

Defendants filed a cross-motion for summary judgment.[14] In it, they asserted that plaintiff's breach-of-contract claim against defendants failed, as a matter of law, on the ground that there was no contract between plaintiff and defendants.[15] With respect to the remaining claims, defendants asserted that they were entitled to summary judgment on the ground that, even if plaintiff could prove that defendants breached their duties as defined by ORS 65.357, plaintiff would not be able to establish that those breaches were the result of gross negligence or intentional misconduct, as required by ORS 65.369.

Plaintiff did not dispute that its claim for breach of fiduciary duty was, in effect, a claim for breach of the statutory duties imposed on nonprofit directors by ORS 65.357, or that ORS 65.369 generally applies to claims for breach of those statutory duties by "qualified directors." Rather, plaintiff responded that (1) whether conduct rises to the level of "gross negligence" is always a fact question for the jury and, alternatively, (2) it had presented evidence from which a reasonable factfinder could find that defendants were grossly negligent or engaged in intentional misconduct.

The trial court denied plaintiff's motion for partial summary judgment but granted defendants' cross-motion on all claims. First, the court ruled that defendants were entitled to summary judgment on plaintiff's claim for breach of contract and violation of the Declaration and bylaws, on the ground that no contract existed between the parties. Second, the court concluded that defendants were entitled to summary judgment on the claims for breach of fiduciary duty, negligent misrepresentation, and unjust enrichment, on the ground that those claims were barred by ORS 65.369. The court reasoned:

[14] Although defendants did not designate their motion for summary judgment as a "cross-motion," we believe that is an appropriate characterization. *See Citibank South Dakota*, 210 Or App at 347-48 (characterizing the parties' motions for summary judgment to be "simultaneous cross-motions" where they addressed a single claim, were filed within three days of each other, and were considered at the same time by the trial court).

[15] After the parties had filed their respective motions for summary judgment, attorneys for defendants moved the court for an order allowing them to withdraw as counsel for Denney. The trial court granted the motion, and Denney joined the other defendants' motion for summary judgment.

"Defendant directors served without compensation as directors of a nonprofit corporation. Accordingly, the extent of their potential liability is set by statute and the corporation bylaws. *ORS 65.369 limits liability to actions constituting gross negligence or intentional misconduct.* The bylaws are even more limiting. In this case, none of the claims alleged reflect the standard of gross negligence or intentional misconduct. *Even if such allegation was made, the facts do not support, as a matter of law, gross negligence or intentional misconduct.*"

(Emphases added.) Third, although defendants had not moved for summary judgment on the claim for declaratory relief, the court concluded that there was no "legal basis" for granting declaratory relief to plaintiff. Based on its determination that defendants were entitled to summary judgment on each of plaintiff's claims, the trial court entered a limited judgment in favor of defendants.

On appeal, plaintiff assigns error to the trial court's grant of summary judgment to defendants on all claims except for the claim for declaratory relief. Plaintiff argues that the grant of summary judgment was erroneous, because plaintiff presented evidence from which a factfinder could find that defendants' conduct amounted, at a minimum, to gross negligence. Plaintiff also reiterates that, as a matter of law, the issue of whether a defendant's conduct was grossly negligent necessarily presents an issue of fact for the jury, and contends that the grant of summary judgment was in error for that additional reason.

## II.  STANDARD OF REVIEW

We review a trial court's grant of summary judgment under ORCP 47 C to determine whether the court correctly concluded that "there is no genuine issue of material fact and the moving party [was] entitled to judgment as a matter of law." *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001); *O'Dee v. Tri-County Metropolitan Trans. Dist.*, 212 Or App 456, 460, 157 P3d 1272 (2007). In so doing, we view the evidence in the light most favorable to the nonmoving party—here, plaintiff— and draw all reasonable inferences in that party's favor. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608

(1997); *Davis v. County of Clackamas*, 205 Or App 387, 389, 134 P3d 1090, *rev den*, 341 Or 244 (2006).

Where, as here, the parties filed simultaneous cross-motions for summary judgment on the same claim, the summary-judgment record "consists of documents submitted in support of and in opposition to both motions." *Citibank South Dakota v. Santoro*, 210 Or App 344, 347, 150 P3d 429 (2006), *rev den*, 342 Or 473 (2007). That is the case even under the circumstances present here, where an appellant assigns error to the grant of summary judgment to the opposing party but not to the denial of its own motion. *See Allen Trust Company v. Cowlitz Bank*, 210 Or App 648, 650, 152 P3d 974, *decision clarified on recons*, 212 Or App 572, 574, 159 P3d 319 (2007) (although the appellant did not assign error to the trial court's denial of its cross-motion for summary judgment, the "relevant facts" on appeal "include[d] those that were part of the record of the case at the time that the court ruled, even if neither party formally submitted them to support or oppose this specific motion").[16] In other words, although we will "not address the correctness of the trial court's denial of plaintiff's motion," *Nixon v. Cascade Health Services, Inc.*, 205 Or App 232, 237 n 4, 134 P3d 1027 (2006), we conduct our review on a record that includes the evidence submitted in connection with plaintiff's own motion, as well as the evidence submitted in connection with defendants' motion.

## III. ANALYSIS

As explained below, we affirm the trial court's grant of summary judgment on plaintiff's claims for breach of contract, negligent misrepresentation, unjust enrichment, and declaratory relief largely for procedural reasons. We reverse

---

[16] *See also Keller v. Armstrong World Industries, Inc.*, 342 Or 23, 30 n 5, 147 P3d 1154 (2006) (considering letter that was part of another summary judgment motion because the wording of ORCP 47 C "is broad enough to permit the court to consider not only the evidence submitted in support of and opposition to the summary judgment motion but also other pleadings and evidence 'on file'"); *Lane v. Floyd*, 213 Or App 215, 221, 222 n 4, 159 P3d 1240 (2007), *rev den*, 344 Or 43 (2008) (where plaintiff assigned error to the grant of summary judgment to one defendant, the summary-judgment record included "both the record made in [that defendant's] summary judgment proceedings and the contemporaneous record made because of plaintiff's summary judgment motion against [another defendant]").

in part the trial court's grant of summary judgment on the claim for breach of fiduciary duty.

## A. Breach of Contract/Breach of Declaration and Bylaws

Plaintiff's breach-of-contract claim is predicated on defendants' alleged breaches of the Declaration and the Res Club's bylaws. The trial court granted summary judgment to defendants on that claim, on the ground that they were not parties to any contract with plaintiff. Although plaintiff assigns error to that ruling, plaintiff has provided no reasoned argument as to why the trial court's conclusion is erroneous. And, in fact, the trial court's conclusion appears to be consistent with the well-established legal principles that (1) the bylaws of a corporation are a contract "between the members of the corporation, and between the *corporation* and its members," *Dentel v. Fidelity Savings & Loan*, 273 Or 31, 33, 539 P2d 649 (1975) (emphasis added); and (2) directors, as agents of a corporation, ordinarily are not parties to the contracts of the corporation, *see Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 147, 831 P2d 73 (1992); William Meade Fletcher, 8 *Fletcher Cyclopedia of the Law of Private Corporations* § 4198, 819-22 (rev 2001) ("[T]he contract [formed by the bylaws] between a member and the corporation is not a contract between a member and those individuals who direct or manage the corporation."). Therefore, absent a well-developed argument as to why the trial court's ruling is incorrect, notwithstanding those principles, we decline to disturb the trial court's grant of summary judgment to defendants on the breach-of-contract claim. *Butler Block, LLC v. TriMet*, 242 Or App 395, 413, 255 P3d 665 (2011) (Court of Appeals will not "make or develop a party's argument when that party has not endeavored to do so itself" (internal quotation marks omitted)).

## B. Unjust Enrichment and Negligent Misrepresentation

Similarly, although plaintiff assigns error to the trial court's grant of summary judgment on its claims for negligent misrepresentation and unjust enrichment, plaintiff has presented no reasoned argument, in either its opening brief or its reply brief, as to why reversal is required as to those claims in particular. We, again, decline to develop

an argument on plaintiff's behalf. We therefore affirm the grant of summary judgment to defendants on plaintiff's claims for unjust enrichment and negligent misrepresentation. *Id.*

## C.  *Declaratory Relief and Accounting*

As mentioned, the trial court also granted summary judgment to defendants on plaintiff's claim for declaratory relief and an accounting, and dismissed that claim, based on its conclusion that "[t]here are no allegations or facts supporting a legal basis for a declaratory judgment or accounting against defendant directors individually." It is unclear to us whether plaintiff intended to assign error to the trial court's dismissal of that claim. Although plaintiff's assignment of error specifically identifies plaintiff's other claims, it does not refer to the claim for declaratory relief and accounting. Elsewhere in plaintiff's briefs on appeal, however, plaintiff mentions that claim. Regardless, plaintiff has not made any focused argument addressing whether and how the trial court's ruling on the claim for declaratory relief and an accounting is erroneous. As with plaintiff's claims discussed above, absent such an argument, we decline to disturb the trial court's ruling. *Id.*

## D.  *Breach of Fiduciary Duty*

We reach a different result with respect to plaintiff's claim for breach of fiduciary duty. Before we analyze that claim, however, we describe what issues are presented to us, in the light of the parties' litigation choices below and on appeal, so as to be clear as to the scope of our task on appeal and as to the parameters of this decision.

In its complaint, plaintiff alleged that defendants breached their fiduciary duties to Res Club members in 13 particulars: (1) failing to properly calculate and apportion "common expenses," as defined in the Declaration; (2) fabricating or inflating common expenses charged by the golf club and other vendors, and billed to the Res Club; (3) assessing such expenses to the Res Club; (4) directing a disproportionate amount of rental business and income to buildings 5 and 6, despite availability within buildings 1 through 4; (5) failing to pay all dues and fees to the Res Club for units

owned by Pronghorn Development; (6) failing to furnish complete and accurate financial information regarding common expenses; (7) failing to make available all Res Club financial and expense records upon request; (8) improperly selling the common furnishings of the Res Club; (9) failing to call a vote of nondeclarant unit owners for the election of a nondeclarant board member; (10) failing to fully fund the Res Club reserve account and improperly using reserve funds for operating expenses; (11) overcharging nondeclarant owners and the Res Club interest charges; (12) failing to call a turnover meeting and to transfer control of the Res Club to nondeclarant owners; and (13) engaging in conflicted transactions and failing to recuse themselves from Res Club business when conflicts arose. Plaintiff alleged further that those breaches damaged plaintiff in the amount of "at least $2,000,000." As noted earlier, plaintiff did not frame its breach-of-fiduciary-duty claim in terms of defendants' statutory duties under ORS 65.357 or otherwise identify which of defendants' duties under ORS 65.357 it believed were breached by defendants' conduct. Instead, plaintiff framed its claim as a common-law claim, and did not cite to ORS 65.357 or ORS 65.369.

In turn, defendants moved for summary judgment. Although defendants noted in their motion that plaintiff had not pleaded its breach-of-fiduciary-duty claim under ORS 65.357 and argued that the claim should be dismissed for that pleading deficit, defendants asserted entitlement to summary judgment on plaintiff's claim for breach of fiduciary duty only on the grounds that (1) ORS 65.369 precluded the imposition of civil liability on them for any of their alleged breaches of duty, because plaintiff would be unable to present evidence sufficient to create a dispute of fact as to whether those breaches of duty were the product of gross negligence or intentional misconduct; and (2) plaintiff would not be able to prove damages.

In response, plaintiff did not dispute either that its claim for breach of fiduciary duty should be treated as a claim for breach of the statutory duties imposed by ORS 65.357(1), or that ORS 65.369(1) applies to claims for breach of the duties imposed by ORS 65.357. Instead, plaintiff argued that "gross negligence" is always a fact question for

the jury, making ORS 65.369 "irrelevant" at the summary-judgment stage of proceedings and, alternatively, that there was evidence that would permit a reasonable factfinder to find that defendants were grossly negligent or engaged in intentional misconduct when committing the alleged breaches of duties.[17]

Because of those litigation choices by the parties below, we assume for the purpose of this appeal that plaintiff can present evidence that would permit a reasonable factfinder to find that defendants' conduct breached one or more of their duties under ORS 65.357.[18] In any event, defendants do not contend otherwise on appeal. Therefore, the only issue before us is whether the evidence in the summary-judgment record would permit a reasonable factfinder to find that any of those alleged breaches resulted from defendants' gross negligence or intentional misconduct, as required by ORS 65.369.

The issue before us has been narrowed further on appeal. In its opening brief, plaintiff has focused on a subset of the alleged breaches of duty identified in the complaint: (1) the improper use of the Res Club reserve fund to pay operating expenses and to pay the golf club's payroll; (2) the overcharging of the Res Club for resort expenses; (3) defendants' failure to initiate collection efforts against Pronghorn Development when it failed to pay its share of the Res Club assessments; (4) defendants' handling of the common furnishings for the Res Club; (5) defendants' failure to call a

---

[17] On appeal, consistent with its position in the trial court, plaintiff does not dispute that ORS 65.369(1) applies to its claims, and, in particular, does not dispute that it must prove that any breach of fiduciary duty by defendants resulted from gross negligence or intentional misconduct in order to hold defendants personally liable for the breach. Neither we nor the Supreme Court have addressed the extent to which ORS 65.369(1), and its statutory requirement of gross negligence or intentional misconduct, applies to a claim against a nonprofit director for breach of the duties specified in ORS 65.357(1). Because plaintiff in this case has never disputed the statute's application to its claims, this case does not present the occasion to analyze the issue further, and we treat the statute as applicable to plaintiff's claims.

[18] The Supreme Court recently explained,

"Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law. Parties opposing summary judgment have the burden of producing evidence that creates a material issue of fact as to those issues, but only as to those issues."

*Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014).

vote and allow for the election of a nondeclarant member to the board; (6) defendants' engagement in "conflicted" transactions; and (7) defendants' failure to ensure that buildings 5 and 6 were added to the Res Club. Accordingly, we confine our review to that same subset of alleged breaches, and we do not disturb the trial court's ruling with respect to the alleged breaches identified in the complaint that plaintiff has chosen not to address in any cogent way in its opening brief.[19]

We make three additional observations before addressing the specific breaches of duty identified by plaintiff. First, although the legislature has not defined "gross negligence" for the purposes of ORS 65.369, it is a term that has a common legal meaning. "Gross negligence" generally means negligence characterized by near total disregard or indifference to the rights of others or the probable consequences of a course of conduct. *See Howard v. Chimps, Inc.*, 251 Or App 636, 647, 284 P3d 1181 (2012), *rev den*, 353 Or 410 (2013) ("To establish gross negligence, [the] plaintiff needed to show that [the] defendant acted with reckless disregard of safety or indifference to the probable consequences of its acts.").

Second, when we are assessing whether a director's breach of a statutory duty resulted from the director's gross negligence, so as to render the director civilly liable for the breach of that duty, we usually must identify which of the director's statutory duties is implicated by the director's conduct. That is because the particular duty that was breached informs our analysis as to whether that breach was grossly negligent. If the director breached the statutory duty of loyalty—that is, the duty to act "[i]n a manner the director reasonably believes to be in the best interests of the corporation," ORS 65.357(1)(c)—we must examine whether the director's conduct evidences a reckless disregard for the best interests of the corporation. *See* William Meade Fletcher, 3 *Fletcher Cyclopedia of the Law of Private*

---

[19] Specifically, we affirm without further discussion the trial court's grant of summary judgment with respect to the following allegations of breach of fiduciary duty: directing a disproportionate amount of rental business to buildings 5 and 6; failing to furnish accurate and complete financial records; overcharging the nondeclarant members and the Res Club interest charges; and failing to call a turnover meeting and transfer control of the Res Club to nondeclarant owners.

*Corporations* § 837.60, 182-83 (rev 2002) (duty of loyalty "is coextensive with the legitimate, enduring interests of the corporation"). If, instead, the director breached the statutory duty of care—that is, the duty to act "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances," ORS 65.357(1)(b)—we must examine, in effect, whether the director's conduct represents a gross deviation from the level of care that an "ordinarily prudent person" would have exercised in the same situation, that is, whether it exhibits a reckless disregard for the consequences of the director's chosen course of conduct. *See* William Meade Fletcher, 3A *Fletcher Cyclopedia of the Law of Private Corporations* § 1032, 20 (rev 2002) (duty of care requires a director to act with "the degree of care an ordinarily prudent person would exercise in a like position under similar circumstances"). Those are different inquiries, and each can lead to a different conclusion as to whether a director's conduct in discharging his or her duties subjects him or her to civil liability.[20] Accordingly, in addressing each of plaintiff's allegations of breach of fiduciary duty, we identify which of the duties under ORS 65.357 appear to be implicated by the particular allegation.[21]

Third, although defendants appear to argue otherwise, whether a defendant's conduct comports with his or her obligations under the corporation's governing documents (in this case, the Declaration and the bylaws) bears on the determination of whether particular conduct by the defendant constitutes a grossly negligent violation of the defendant's duties. As corporate directors, defendants were obligated to comply with the provisions of the corporation's governing documents, *see* ORS 100.417(1) (board of directors of condominium association may act on behalf of the association "except as limited by the declaration or bylaws");

---

[20] For example, conduct that may conceivably comport with the standard of care in the abstract may nonetheless evidence a reckless disregard for the interests of the corporation if, for example, the corporation's governing documents prohibit the conduct at issue.

[21] In its brief, plaintiff appears to treat its claim as implicating primarily the duty of loyalty. Defendants in their brief appear to treat plaintiff's claim as implicating primarily the duty of care. As a consequence, the parties' arguments with respect to the various alleged breaches of fiduciary duty are not fully responsive to each other.

ORS 94.858(4) (authority of timeshare owners' association is "[s]ubject to the provisions of the timeshare instrument and bylaws"); *see also* William Meade Fletcher, 2 *Fletcher Cyclopedia of the Law of Private Corporations* § 505, 579 (rev 2006) (corporate directors are empowered "to do whatever is necessary to manage the ordinary business of the corporation, subject to any express restrictions in the charter, bylaws, or the general law"), and such governing documents can define both what is in a corporation's best interest, as well as the standard of care for directors with respect to certain matters. Presented with evidence that a director acted in a way that was clearly prohibited by the governing documents, or failed to take an action that was clearly required by the governing documents, a factfinder could find not only that it was unreasonable for the director to believe that the conduct was in the best interest of the corporation, but also that the director acted with reckless disregard to the corporation's best interest, as that interest has been defined by the corporation's governing documents, and, thus, with reckless disregard to the attendant breach of fiduciary duty. *See Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 10 NE 3d 307, 331-34 (Ill App 2014) (upholding trial court's ruling that homeowners association directors' breach of fiduciary duty was grossly negligent where directors' conduct violated clear requirements of the condominium declaration and state statute); *see also Patin v. Ferguson*, 115 So 3d 1204, 1210-11 (La App 3 Cir 2013) (breach of fiduciary duties by LLC member was grossly negligent when conduct violated clear statutory requirement). Put another way, a director's statutory duties under ORS 65.357 will generally encompass the duty to act in accordance with governing corporate documents, and evidence that a director has disregarded his or her unambiguous obligations under the corporation's governing documents may be sufficient to support a finding that the director's breach of any of those duties was the product of gross negligence.[22]

---

[22] That is not to say that every breach of an obligation under a corporation's governing documents will amount to a grossly negligent breach of a director's duties. The clarity of the director's obligations informs the analysis. If, for example, a provision contained in a governing document is ambiguous, and a director breaches the provision based on a reasonable, but mistaken, interpretation of the obligations imposed by that ambiguous provision, that breach, to the extent

With those points in mind, we address whether plaintiff presented sufficient evidence to withstand summary judgment on the alleged breaches of duty identified by plaintiff in its opening brief.[23] That is, we examine whether the evidence of the conduct underlying those alleged breaches, and the other evidence of the circumstances of those breaches, would permit a reasonable factfinder to find either that defendants (1) engaged in intentional misconduct; (2) failed to exercise the degree of care that a prudent person would exercise in the same circumstances, and did so with reckless disregard or indifference to the probable consequences of their conduct (in the case of a breach of the statutory duty of care); or (3) recklessly disregarded their obligations to act in a manner that they reasonably believed to be in the best interests of the Res Club (in the case of a breach of the statutory duty of loyalty).[24]

1. *Misuse of reserve funds*

a. Misuse of reserve funds to pay Res Club operating expenses

We reverse the trial court's grant of summary judgment to defendants on plaintiff's allegation that defendants breached their duties by using reserve funds to pay for operating expenses. In our view, that allegation implicates defendants' duty of loyalty, or the duty to act in a manner that they reasonably believe is in the best interest of the corporation. That is because the allegation involves conduct that violates the bylaws' restriction on the use of reserve funds which, a factfinder could find, define what is in the

---

that it also breached one or more of the director's statutory duties, would not be a grossly negligent one.

[23] As mentioned, plaintiff argues that the issue of "gross negligence" always presents an issue of fact for the jury, thereby precluding summary judgment as a matter of law in any case involving gross negligence. We disagree. The issue of "gross negligence" presents a fact question for the jury so as to preclude summary judgment only when the summary judgment record contains *evidence* that would support a finding of gross negligence. If the record contains no such evidence, then summary judgment must be granted. *See, e.g., Howard*, 251 Or App at 650 (affirming grant of summary judgment on claim for gross negligence when evidence was insufficient to permit finding that defendant acted with gross negligence).

[24] Although ORS 65.357(1) also imposes upon directors a duty to act in "good faith," we focus primarily on the statutory duties of loyalty and care.

corporation's best interest with respect to the use of reserve funds. Plaintiff's evidence demonstrates that the bylaws unambiguously prohibited defendants from using reserve funds to pay for operating expenses, and that defendants were notified on one or more occasions by their accountants that the bylaws "clearly prohibited" defendants' conduct. From that evidence, a factfinder could find that defendants recklessly disregarded their clear obligations under the bylaws when they misused reserved funds, thereby, at a minimum, recklessly disregarding their obligation to act in a manner that they reasonably believed to be in the best interest of the Res Club, as that interest is defined by the applicable bylaws.

### b. Transfer of Res Club funds to the golf club

We reverse the grant of summary judgment as to Hix and Denney on the allegation that defendants breached their duties by transferring $85,000 from the Res Club reserve fund to the golf club to meet payroll. That allegation, at a minimum,[25] also implicates defendants' duty of loyalty, or the duty to act in a manner that they reasonably believe is in the best interest of the corporation. The summary-judgment evidence—that Hix admitted taking money from the Res Club, one corporate entity, and giving it to the golf club, a separate corporate entity—would permit a finding that Hix, in his own words, "st[ole]" the Res Club's money, thereby, at a minimum, breaching his statutory duty of loyalty to the Res Club with reckless disregard for that duty. A factfinder could also find, alternatively, that Hix's conduct constituted intentional misconduct, subjecting him to liability on that basis. The evidence further shows that Denney was aware that Hix took the Res Club's funds but that he did not take any form of corrective action, permitting a finding that Denney acted with reckless disregard of his obligation to act in a manner that he reasonably believed was in the best interest of the Res Club.

Regarding the other defendants, on appeal, plaintiff has not identified any evidence in the summary-judgment record that would permit a finding that those defendants'

---

[25] It also, conceivably, implicates defendants' statutory duty to act in good faith.

conduct in connection with the $85,000 transfer amounts to gross negligence or intentional misconduct, and it is not our job to comb the record to identify such evidence. We therefore affirm the grant of summary judgment to Walley, Clark, and Fulghum on that allegation.

### 2. *Overcharging the Res Club*

We reverse the grant of summary judgment as to Hix, Walley, Denney, and Clark on plaintiff's allegation that defendants breached their fiduciary duties by intentionally overloading the Res Club with resort expenses. That allegation also implicates defendants' duty of loyalty, or the duty to act in a manner that they reasonably believe to be in the best interests of the Res Club. The summary-judgment evidence would permit a reasonable factfinder to find that there were significant disparities between the charges to the Res Club and the charges to the homeowners association for the condominiums; that some of the largest charges to the Res Club were for unidentified "services" that defendants were unable to explain; that, on at least one occasion, the Res Club was billed expressly for services performed on the condominiums; and that, at Res Club board meetings attended by Denney and Clark, Hix and Walley would "try[] to figure out how to load expenses from [the golf club] onto the HOA of the Residence Club"—a practice which Denney questioned, but that neither Denney nor Clark did anything to stop.

From those facts, a reasonable factfinder could infer that Hix and Walley breached their statutory duty of loyalty with, at a minimum, gross negligence. In particular, a factfinder could permissibly infer that the conduct of intentionally overloading expenses onto the Res Club reflected a reckless disregard of that entity's best interests. A reasonable factfinder also could infer that Denney and Clark recklessly disregarded their statutory duty of loyalty to the Res Club by watching Hix and Walley load expenses onto the Res Club without disclosing that conduct to the Res Club members or otherwise taking any action to stop it.

Pointing to reports by accountants that conclude that expenses allocated to the Res Club were reasonable, defendants argue that no reasonable factfinder could find,

in light of those reports, that defendants were grossly negligent in allocating expenses to the Res Club. However, those reports—which were prepared *after* defendants allocated expenses to the Res Club in the challenged manner—do not preclude a finding that defendants loaded resort expenses onto the Res Club, in reckless disregard of the Res Club's best interests. If a factfinder were to credit Denney's testimony that Hix and Walley intentionally loaded expenses onto the Res Club, beyond those expenses actually attributable to the Res Club, that factfinder could further find that defendants acted with reckless disregard of the best interests of the Res Club.

Regarding Fulgham, in its brief on appeal, plaintiff has identified no evidence to permit a factfinder to find that Fulgham was involved in, or even aware of, Hix and Walley's scheme to overcharge the Res Club with resort expenses, and we decline to comb the record in search of such evidence on plaintiff's behalf. For that reason, we affirm the trial court's grant of summary judgment on plaintiff's allegation that Fulgham breached his fiduciary duty by overcharging the Res Club with resort expenses, but reverse with respect to defendants Hix, Walley, Denney, and Clark.

3. *Failure to initiate collection action against Pronghorn Development*

We affirm the grant of summary judgment to defendants on this allegation, which we believe to implicate both the statutory duties of care and loyalty. It is undisputed that Pronghorn Development, the declarant, faced severe financial difficulties and that the reason that it did not pay its assessments was that it did not have the funds to do so. And plaintiff identifies no evidence in the summary-judgment record that would permit a factual finding that defendants' failure to initiate inevitably fruitless collection efforts against the declarant evidences a reckless disregard of the Res Club's best interests or a gross deviation from the care that an ordinarily prudent person would exercise under the same circumstances. *See Bernards v. Summit Real Estate Management, Inc.*, 229 Or App 357, 370, 213 P3d 1 (2009) ("The duty to sue does not arise * * * when 'success' would be of 'little or no net value.'").

## 4.  *The lease arrangement with Pacific*

We reverse the grant of summary judgment to Hix, Walley, Denney, and Clark on plaintiff's allegation that defendants breached their fiduciary duties when they failed to adequately address Pronghorn Development's decision to lease the common furnishings for the Res Club, notwithstanding the Declaration's representation that the common furnishings would be owned by the Res Club. That allegation appears to implicate, at a minimum, the statutory duty of loyalty, and we conclude that a reasonable factfinder could find that any breach of that duty did rise to the level of gross negligence.

Specifically, the summary-judgment record would permit a reasonable factfinder to find the following facts. When defendants were made aware that the declarant was not going to comply with its obligation under the Declaration to provide the Res Club with common furnishings that were owned by the Res Club, defendants did not disclose that breach to the members of the Res Club. Instead, Hix and Denney purported to amend the Declaration to, in effect, let the declarant off the hook for breaching its obligation under the Declaration. However, when purporting to amend the Declaration, defendants did not submit the matter to the nondeclarant members of the Res Club for their approval, as required by the Declaration. Defendants then agreed on behalf of the Res Club to sublease the common furnishings from the declarant (rather than having the Res Club lease the common furnishings directly). That, in turn, left the Res Club exposed to the risk of a default by the declarant, as well as placed the nondeclarant members of the Res Club in the position of paying to lease common furnishings (through Res Club assessments), when those nondeclarant members had already paid to have Res Club-*owned* common furnishings when purchasing their timeshares.

From that course of conduct, a reasonable factfinder could infer that defendants' breach of their statutory duty of loyalty was the product of a reckless disregard for the best interests of the Res Club. Defendants' conduct effectively concealed from Res Club members a significant breach by the declarant, thereby impeding Res Club members' ability to

protect their interest in having permanently furnished time-share units, either individually or collectively. Furthermore, although it may have been reasonable for defendants to conclude that attempting to enforce the declarant's obligation to convey ownership of the common furnishings was not in the interest of the Res Club at that time, a factfinder could reach a different conclusion regarding Hix and Denney's decision to amend the Declaration to *accommodate* the declarant's breach. The decision to adopt that amendment without complying with the Declaration's unambiguous requirements for such an amendment further evidences a reckless disregard for the best interests of the Res Club, as those interests have been defined in the Declaration. Finally, defendants' decision to sublease the furniture from the declarant's subsidiary—rather than insisting on leasing the furniture from Pacific directly—could support a finding that defendants recklessly disregarded the interest of the nondeclarant members of the Res Club in not paying for the common furnishings twice.

Although we reverse the grant of summary judgment to Hix, Walley, Denney, and Clark on this allegation, we affirm the grant of summary judgment to Fulghum. Fulghum did not join the board until 2010 and, as a result, there is no evidence that he was even involved in any decisions regarding the common furnishings, let alone that he was grossly negligent or engaged in intentional misconduct.

5. *Defendants' failure to hold an election to add a nondeclarant board member*

We reverse the grant of summary judgment on this allegation as to all defendants, which, in our view, implicates defendants' statutory duty of loyalty. The evidence in the summary-judgment record would permit a finding that the Declaration plainly required the board to hold an election to replace its membership after one year and to add a nondeclarant board member at that time. The evidence would permit a further finding that no such election was held during any of defendants' terms of service on the board. From those facts, a reasonable factfinder could infer that defendants recklessly disregarded their duty to act in a manner that they reasonably believed to be in the best interest of

the corporation by failing to comply with the unambiguous requirements of the Declaration, which a factfinder could find defines what course of action is in the Res Club's "best interest" in terms of composition and selection of the board of directors.

### 6. Defendants' conflicts of interest

We affirm the trial court's grant of summary judgment to defendants on plaintiff's general "conflict-of-interest" allegation. Although plaintiff's theory on this allegation is not clear to us from plaintiff's briefing, plaintiff appears to be arguing that a reasonable factfinder could infer that defendants were grossly negligent or engaged in intentional misconduct simply by virtue of the fact that each of them served on the boards of other entities associated with the resort or were employed by other entities associated with the resort. But the fact that defendants were involved with other entities at the resort does not, standing alone, permit the inference that any particular breach of duty by defendants amounted to either gross negligence or intentional misconduct.[26]

### 7. Defendants' failure to ensure that buildings 5 and 6 were added to the Res Club

Finally, we affirm the grant of summary judgment to defendants on plaintiff's allegation regarding defendants' handling of buildings 5 and 6, although we note that this allegation does not appear to be encompassed by the complaint and we are not certain that it was, in fact, litigated before the trial court. In any event, the record contains no evidence that would permit a factfinder to find that any breach of defendants' statutory duties of care and loyalty—the duties that appear to be implicated by this claim—resulted from either gross negligence or intentional misconduct. To the contrary, if anything, the evidence affirmatively indicates that defendants acted reasonably in carrying out their duties. It

---

[26] In addition, as defendants point out, the applicable statutes allow transactions in which a director has a conflict of interest if the transaction is fair to the corporation and approved in one of the ways described in ORS 65.361, indicating that proof of a conflict of interest, standing alone, is insufficient to establish that the approval of a particular conflict-of-interest transaction amounts to a breach of duty that is grossly negligent.

is true that the Declaration contemplated that the developer would treat those buildings as timeshares and add them to the Res Club. However, given the undisputed facts that (1) the resort as a whole was facing serious financial difficulties during the relevant time period; and (2) the developer's counsel advised that it was permissible for the developer to change course as to how to treat buildings 5 and 6, there is no basis to conclude that any breach of the standard of care by defendants was the product of reckless disregard of the consequences of defendants' action, or that defendants acted with reckless disregard of the best interests of the Res Club, in their handling of the change of plan for buildings 5 and 6.

## IV. CONCLUSION

To summarize, we affirm the grant of summary judgment to defendants on all claims except for plaintiff's claim for breach of fiduciary duty. With respect to the trial court's grant of summary judgment on the breach-of-fiduciary-duty claim, we rule as follows:

(1) On the allegation that defendants breached their fiduciary duties by using reserve funds to pay operating expenses, reversed as to all defendants;

(2) On the allegation that defendants breached their fiduciary duties by transferring $85,000 from the Res Club reserve fund to the golf club, reversed as to Hix and Denney, but affirmed as to remaining defendants;

(3) On the allegation that defendants breached their fiduciary duties by overcharging the Res Club for resort expenses, reversed as to Hix, Walley, Denney, and Clark, but affirmed as to Fulghum;

(4) On the allegation that defendants breached their fiduciary duties in connection with the lease of the common furnishings, reversed as to Hix, Walley, Denney, and Clark, but affirmed as to Fulghum;

(5) On the allegation that defendants breached their fiduciary duties by failing to hold an election to add a non-declarant board member in the manner required by the Declaration, reversed as to all defendants; and

(6)   With respect to all other allegations of breach of fiduciary duty, the trial court's grant of summary judgment is affirmed in all respects as to all defendants.

Reversed in part and remanded.